[No. 6094.  Decided August 29, 1906.]

SEATTLE SHOE COMPANY, *Appellant,* v. FRED PACKARD *et al., Respondents.*[1]

PRINCIPAL AND AGENT—AUTHORITY—EVIDENCE—DRAFTS ON PRINCIPAL. The fact that a commercial traveler had drawn drafts on his principal during a period of years, and that such drafts had been honored, does not establish his authority to bind his principal in that way for advances, especially where such advances had been made and the drafts cashed largely on his own personal credit; since a commercial traveler's authority extends only to the soliciting of orders.

BILLS AND NOTES — DRAFTS — LIABILITY OF DRAWEE BEFORE ACCEPTANCE. Under the negotiable instrument law, Laws 1899, p. 340, *et seq.,* providing that no person shall be liable on an instrument whose name does not appear thereon, a firm upon whom a draft is drawn by its commercial traveler is not liable thereon before acceptance by reason of any custom in previous years to honor such drafts.

Appeal from a judgment of the superior court for King county, Albertson, J.; entered January 6, 1905, upon grant-

1Reported in 86 Pac. 845.

ing a nonsuit at the close of plaintiff's case, in an action against the drawee of a draft. Affirmed.

*John W. Roberts* and *Harry E. Warner*, for appellant.

*Shank & Smith*, for respondents.

DUNBAR, J.—The Seattle Shoe Company was engaged in the retail boot and shoe business in the city of Seattle. The defendants are wholesale boot and shoe manufacturers in Brockton, Massachusetts. George B. Smith was a traveling representative of defendants, Seattle being a part of his territory. Smith represented the defendants from 1895 until 1904. In the spring of 1898 Smith sold the Seattle Shoe Company, through Mr. Hicks, one of the company, a bill of goods. At that time the plaintiff, the shoe company, cashed a draft which Smith had drawn on his employers Packard & Field. During the years that followed, several other drafts were drawn on Packard & Field, and were honored by them. In the spring of 1904, the following drafts were drawn:

"The Seattle National Bank, Seattle, Washington, June 20, 1904.

"At sight - - - - $200.00. Pay to the order of Seattle Shoe Co. Two Hundred 00-100 Dollars. Value received and charge to the account of George B. Smith.

"To Packard & Field, Brockton, Mass."

"The Seattle National Bank, Seattle Washington June 29, 1904.

"At sight - - - - $150.00. Pay to the order of Seattle Shoe Co. One Hundred & Fifty 00-100 Dollars. Value received and charge to the account of George B. Smith.

"To Packard & Field, Brockton, Mass."

These drafts when presented to Packard & Field were not paid, but were protested for nonpayment, and plaintiff as indorser was obliged to pay. This suit was brought to recover the money paid to take up these last two drafts. It is

admitted that the defendants never in any manner notified plaintiff, after the first draft, that Mr. Smith was not authorized to draw on them for his traveling expenses. Upon the close of the plaintiff's testimony, the court granted a nonsuit. Judgment was entered dismissing the case, and from such judgment this appeal was taken.

It is the contention of the appellant that, by their course of conduct in paying drafts which had been indorsed by it, the respondents had made themselves liable to it for the payment of these drafts; that this transaction was equivalent to a loan to Packard & Field, and that, by authorizing these drafts for their own use, they became liable as such to the lender, irrespective of the question of acceptance. Many cases are cited by the appellant to the effect that, by a course of conduct, agency may be established, and that if acts have been done by an agent in excess of his authority and the principal on being informed of them fails to disavow them in a reasonable time, his silence may be considered as an acquiescence in the acts done, etc. But it seems to us that there is no authority express or implied proven by the appellant in this case. The most that can be said is that during a period of years other drafts which appellant indorsed had been paid by the respondents. There is no proof offered by the appellant that there was any notice to it in any other way that Smith was authorized to draw upon them, or that his drafts would be honored. There is nothing to show that it was not Smith upon whom the appellant relied instead of upon the respondents. In fact, one of these drafts was made in part as a payment for cash advances which had already been made to Smith upon his own credit, and the whole testimony shows that there was a familiarity and friendship between Smith and the appellant which would warrant it in extending the favors which it did extend. It must have known that, in the absence of express authorization. Smith had no power to bind

the respondents. The law in relation to the scope of Smith's authority is thus stated in 6 Am. & Eng. Ency. Law (2d ed.), p. 224:

"§ 1. The scope of a commercial traveler's authority is well defined, and, as a general rule, extends only to the soliciting of orders for goods.

"§ 3. Third parties dealing with him are bound, at their peril, to ascertain his real powers; and the mere statement of the drummer that he is authorized to do any unusual act will not be sufficient to bind his principal.

The principal will, of course, be bound by the drummer's acts within the apparent scope of his authority. But the borrowing of money is plainly not within such apparent scope.

But, outside of the authorities which have been cited in this case, our own statutes settle the status of the parties to a transaction of this kind. Chapter 149, found on pages 340 *et seq.* of the Laws of 1899, a chapter relating to negotiable instruments, undertakes to establish the law of this state in relation thereto. Section 18 provides: "No person is liable on the instrument whose signature does not appear thereon, except as herein otherwise expressly provided." It will be observed that this is an action upon the draft, and it will be further observed that the signature of the respondents does not appear upon said draft, and no liability of the respondents can therefore attach unless the liability is otherwise expressly provided in the act, and no such express provision can be found. Section 19, it is true, provides that the signature of any party may be made by any authorized agent, and that no particular form of appointment is necessary for this purpose, and the authority of the agent may be established as in other cases of agency. But there was no authority of agency established here. The only presumption that could arise from the payment of drafts was the presumption that the maker of the draft had credit with the respondents at the time the draft was presented. It would be a dangerous doctrine to announce that the honoring of a draft, or even of

several drafts, during a period in which the maker of the drafts had funds in the hands of the drawee, would establish an agency under the authority of which the maker could draw on the drawee *ad libitum*. So far as this case is concerned, so long as Smith had credit with the respondents, his drafts were honored. When the credit was extinguished, the respondents acted within their rights by refusing to pay the drafts. The legal assent to, and acceptance of, a bill are specially set forth in § 132 of the same act, as follows:

"The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee."

The acceptance not having been in writing, and there having been no authority shown for the issuance of the draft, the court committed no error in granting the nonsuit.

The judgment is affirmed.

MOUNT, C. J. ROOT, CROW, and FULLERTON, JJ., concur.