A. C. BROWN et al., doing business as SPRING GROVE LIVESTOCK EXCHANGE, Appellants, v. A. F. SCHMITZ et al., doing business as IOWA LIVESTOCK EXCHANGE, Appellees.

No. 46838.

APRIL 2, 1946.

John D. Randall, of Cedar Rapids, for appellants.

Donnelly, Lynch, Anderson & Lynch and Yessler & Fahey, all of Cedar Rapids, for appellees.

GARFIELD, J.—█ Our review of this case has been more difficult because the trial court, with consent of counsel, ordered that the record upon appeal include the complete transcript of the reporter's notes of the trial. Nothing has been abstracted. The record contains numerous questions to witnesses which were withdrawn, the complete testimony of a witness which was stricken and of which ruling no complaint is made, and much other matter that is not material to the appeal.

Rule 340, Rules of Civil Procedure, contemplates that the record upon appeal shall consist of a summarized and abridged statement of so much of the record in the trial court as is material to the appeal. Testimony should appear in narrative form unless it is deemed of particular importance that it be shown by question and answer. Reasonable compliance with Rule 340 will facilitate the work of the court.

In the fall of 1942 plaintiffs, Brown and Sylling, were partners who operated a livestock sale barn at Spring Grove in southeastern Minnesota. Defendants, Schmitz and Easker, were partners in the operation of a similar establishment in Cedar Rapids, Iowa. The principal business of each was the sale at auction of livestock for others at a commission to the seller of three per cent. Between October 29 and December 2, 1942, Adrian R. Mead, whose home was in Manchester, Iowa, bought cattle at different sale barns, and in some instances from farmers, in the vicinity of northeastern Iowa. Mead shipped many of these cattle to defendants' barn in Cedar Rapids, where they were sold on commission. Some of these cattle he shipped to a sale barn in Manchester to be sold. Mead also sold a few of the cattle purchased by him to individuals.

On December 1, 1942, Mead purchased twenty-nine cattle at plaintiffs' sale barn, for which he gave plaintiffs a check

signed by him for $2,878 drawn on Peoples Savings Bank of Cedar Rapids. In the lower left corner of the check, following the printed words ''Drawn at'' and above the printed words ''name of town,'' was written ''Iowa Livestock Sales Co.'' Mead, who wrote the check, testified in substance that he intended the last-quoted words to refer to ''Iowa Livestock Exchange,'' defendants' trade name. The check was protested for nonpayment on December 7th. This action was brought to recover from defendants the amount of the check, on the theory, as the pleadings stood at the trial, that Mead was defendants' agent in the purchase of the cattle. Trial was to the court. At the conclusion of plaintiffs' evidence, defendants' motion to dismiss (equivalent to a motion for directed verdict if there had been a jury) was sustained and plaintiffs have appealed from judgment of dismissal.

I. Plaintiffs complain that certain amendments to their petition were stricken or dismissed. In February 1943, plaintiffs filed their amended and substituted petition in five counts. Count 1 alleged that defendants orally agreed with Mead to pay for all cattle for which he would draw checks or drafts upon defendants. (It is plaintiffs' theory that the check for $2,878 was drawn upon defendants.) Count 2, upon which the case was tried, alleged that Mead purchased the cattle from plaintiffs as defendants' agent. Count 3 was based on the execution and delivery to plaintiffs of the check or draft for $2,878. Count 4 alleged the wrongful conversion of cattle purchased from plaintiffs by defendants through their agent Mead. Count 5 was based on the theory of unjust enrichment.

Defendants demurred to counts 1, 4, and 5 on the ground that each count failed to state a cause of action. Motions to strike portions of counts 2 and 3 were also filed. On May 26, 1943, defendants' demurrers to counts 1, 4, and 5 were sustained. Plaintiffs were given ten days to plead over or to stand upon the rulings. At this time, too, there were stricken certain allegations of count 3 and allegations of count 2 (upon which trial was had) that defendants had held out Mead as their agent. Plaintiffs filed no further pleading until August 10, 1943. In the meantime, on June 9, 1943, plaintiffs having failed to plead over within the time fixed by the ruling of May 26th,

judgment was entered dismissing counts 1, 4, and 5 at plaintiffs' costs. Plaintiffs did not appeal from this judgment and have not assigned it or the ruling of May 26th as error upon this appeal.

On August 10, 1943, plaintiffs added counts 6 to 10 to their amended and substituted petition. These counts proceeded on the same theories and the allegations are similar to those expressed in count 2, upon which trial was had, count 3, and counts 4 and 5, previously held bad upon demurrer. Upon September 11, 1943, a demurrer to count 3 was sustained and counts 6 to 10 were stricken or dismissed on defendants' motion. Plaintiffs were given ten days to plead over or to stand on the ruling.

Plaintiffs filed no further pleading until October 4, 1943, when they added counts 11 and 12, each of which alleged merely that plaintiffs sold cattle to defendants through their agent Mead, of the agreed value (in count 11) and of the reasonable value (in count 12) of $2,878. These allegations were a substantial repetition of count 7, which was dismissed on September 11th, and added nothing to count 2, upon which trial was had. On October 18th judgment was entered striking counts 3 and 6 to 10, at plaintiffs' costs, for failure to plead over within the time fixed by the ruling of September 11th. Counts 11 and 12 were also stricken because not filed within the time granted to plead and because they were a repetition of allegations in a count previously dismissed.

On the third day and again on the fourth and last day of the trial in May 1945, plaintiffs asked leave to amend their petition to plead that defendants authorized their agent Mead to draw drafts on them for the purchase of livestock in the total sum of about $26,000, all but one of which were paid by defendants, who ratified the acts of Mead and were estopped to deny his agency. The trial court refused to permit the filing of these amendments. The court also struck, as too late, plaintiffs' reply, filed just before the trial, which also alleged that defendants were estopped to deny the agency of Mead.

■ Abuse of discretion in striking plaintiffs' reply does not appear. The answer to which the reply purported to respond was filed October 8, 1943. Rule 85(c), Rules of Civil

Procedure, requires, "Reply must be filed, if at all, within seven days after the answer to which it responds * * *." Plaintiffs concede that all proceedings in this action after July 4, 1943, when these Rules took effect, were governed thereby. The reply was not filed until nearly seventeen months after the answer. This delay was sufficient justification for the striking of the reply. This conclusion is in no way inconsistent with our holding in City of Des Moines v. Barnes, 237 Iowa 6, 20 N. W. 2d 895, where plaintiff acquiesced in defendant's delay in filing answer and failed to move for default until after answer was filed.

Defendants' answer consists of admissions and denials of allegations in plaintiffs' count 2. A reply was therefore not necessary. Rule 73, Rules of Civil Procedure; State ex rel. Kuble v. Capitol Benefit Assn. (Mantz, J.), 237 Iowa 363, 21 N. W. 2d 890. Whether, as defendants contend, a reply was not permissible because the answer contained no new matter, we need not decide.

A ruling on a demurrer in and of itself settles nothing. Whitfield v. Grimes, 229 Iowa 309, 319, 294 N. W. 346, and cases cited; Schwartz v. Consolidated Sch. Dist., 225 Iowa 1272, 1278, 282 N. W. 754, and cases cited. However, the judgment of June 9, 1943, dismissing counts 1, 4, and 5, following the sustaining of demurrers and failure to plead over within the time allowed, was a final determination of the causes of action therein stated. This is the effect of section 11148, Code, 1939, then in force, superseded on July 4, 1943, by Rule 86, Rules of Civil Procedure. (Rule 86 was clarified by amendment, effective July 4, 1945. See Acts of the Fifty-first General Assembly, 339.) This is also the effect of our decisions, regardless of statute or rule, and of the decisions generally. Oates v. Morningside College, 217 Iowa 1059, 1064, 252 N. W. 783, 91 A. L. R. 563, and authorities cited; Cooley v. Maine, 183 Iowa 560, 165 N. W. 1015, and cases cited; Lamb v. McConkey, 76 Iowa 47, 40 N. W. 77; annotations 106 A. L. R. 437, 13 A. L. R. 1104; 41 Am. Jur. 468, 469, section 251. There is nothing in the Rules of Civil Procedure which justifies a contrary holding.

As stated, plaintiffs do not assign as error the *judgment*

of dismissal on June 9th. Nor do they assign error upon the sustaining of the demurrer to count 3 nor the judgment dismissing this count. They do assign as error, however, the striking or dismissal of counts 6 to 12 and the judgment of October 18, 1943, dismissing counts 6 to 10 at plaintiffs' costs. Without holding that upon this appeal plaintiffs are entitled to a review of the judgment of dismissal of October 18th, from which no appeal was taken, we are satisfied plaintiffs' counts 6 to 12 either add nothing material to the allegations of count 2, upon which trial was had, or reallege the same causes of action stated in counts 1, 3, 4, and 5, which were dismissed by judgment after demurrers had been sustained and failure to plead over within the allotted time. Since these causes of action, insofar as they differ from that stated in count 2, had been adjudicated adversely to plaintiffs, they were not entitled to reassert them. See authorities cited last above.

As to the amendments tendered during the trial, the court had considerable discretion in granting or refusing leave to file them. Andreas & Son v. Hempy, 221 Iowa 1184, 268 N. W. 13, and cases cited; Markley v. Western Union Tel. Co., 151 Iowa 612, 615, 132 N. W. 37; Emmerson & Co. v. Converse, 106 Iowa 330, 331, 332, 76 N. W. 705. Rule 88, Rules of Civil Procedure, relating to amendments, so far as applicable here, does not greatly differ from section 11182, Code, 1939, which it supersedes. We think no abuse of discretion appears here.

II. Plaintiffs contend they were erroneously denied a jury trial. The court ruled that all proceedings in the case after July 4, 1943, when the Rules of Civil Procedure took effect, were governed by the Rules. As stated, plaintiffs concede this much. The court further ruled that since there had been no demand for a jury as required by Rule 177, trial should be to the court. We find no prejudicial error in this ruling. Under Rule 177(b) plaintiffs could have demanded a jury within ten days after October 8, 1943, when defendants' answer was filed. Plaintiffs made no demand for a jury *at any time*. Apparently they were willing to try the case to the court. At least, they made no objection thereto in the trial court. Further, since we hold in effect that defendants would have been

entitled to a directed verdict if there had been a jury, plaintiffs were not prejudiced by trial to the court.

III. Plaintiffs complain of the sustaining of many objections to evidence offered by them. The rulings are entirely too numerous to permit discussion of them. Much of the record consists of offers of evidence made by plaintiffs following the sustaining of defendants' objections. However, in passing on the sufficiency of the evidence to support a finding that Mead was defendants' agent we have considered, as plaintiffs contend we should, not only the evidence received but that offered by plaintiffs and excluded by the court, insofar as it was competent.

IV. We think the evidence received and that offered by plaintiffs which should have been received, considered in the light most favorable to plaintiffs, is insufficient to warrant a finding that Mead was defendants' agent in purchasing the cattle from plaintiffs.

An agency results from the manifestation of consent by one person, the principal, that another, the agent, shall act on the former's behalf and subject to his control, and consent by the other so to act. Restatement of the Law, Agency, sections 1, 15. See, also, 2 Am. Jur. 13, section 2; 2 C. J. S. 1023, section 1. An agency may be proven not only by direct evidence of an agreement between the parties but also by circumstantial evidence, such as their words and conduct, from which an intention to create an agency may be fairly implied. Andrew v. Kolsrud, 218 Iowa 15, 18, 253 N. W. 913; Greenlease-Lied Motors v. Sadler, 216 Iowa 302, 307, 249 N. W. 383, and authorities cited; Thompson Yards v. Haakinson & Beaty Co., 209 Iowa 985, 989, 229 N. W. 266; 2 Am. Jur. 25, section 23; 2 C. J. S. 1045, section 23a.

In the latter part of October 1942 Mead was on parole from the state penitentiary, but it does not appear this was known to either plaintiffs or defendants. Defendants were in better position than plaintiffs to have learned of Mead's past. Mead was experienced in handling cattle and apparently desired to make money in buying and selling them but was without sufficient funds. It is to be inferred that he informed defendant Easker of his plan and asked if he could draw on

defendants to pay for the cattle he purchased provided he would ship them to defendants for resale on commission. '

Mead testified:

"Mr. Easker asked me if it would be possible for me to put up $500 to take the place of any loss and in case it does happen to come up, also known as a buffer, which I did, and he made the remark that when the cattle was in the yards at the [defendant] sale company he would honor the draft for the payment of the cattle."

On October 29, November 10, 11, 21, 24, 25, and December 2, 1942, the record shows purchases of cattle by Mead in the vicinity of northeastern Iowa totaling $23,069, not including the purchase directly involved here. To pay for these cattle he gave the sellers eleven checks or drafts signed by him, drawn, or intended to be drawn, on defendants through the Peoples Savings Bank of Cedar Rapids, where defendants had an account. The forms on which these instruments were written were not furnished by defendants nor was defendants' name printed or stamped thereon.

With a few exceptions these cattle were forthwith shipped to defendants by Mead. Defendants authorized the Peoples Savings Bank to pay each of the eleven checks or drafts above mentioned and they were paid. Defendants gave the bank this authority with regard to each instrument after defendants had received the cattle for which they were given. One of these eleven instruments, for $2,373, was given plaintiffs to pay for twenty-five cattle purchased from them by Mead on November 24, 1942. This instrument was stamped "Paid" by the Cedar Rapids bank on December 1, 1942, the day on which Mead purchased the twenty-nine cattle in Spring Grove, Minnesota, for which recovery is sought in this suit.

One of the eleven instruments above mentioned was given to the Ryan Commission Company of Waukon on November 24, 1942. Ryan, manager of the company, testified he talked with defendant Easker in Cedar Rapids on November 15, 1942, relative to the right of Mead to draw drafts on defendants and "he said he would pay those drafts." Plaintiffs proffered the testimony of Ryan and that of one of plaintiff partners, which the

court excluded, that Ryan told this plaintiff and one of plaintiffs' employees, before November 24, 1942 (when plaintiffs took from Mead the check for $2,373 which was paid), "Mr. Easker had said he would honor drafts drawn on the Iowa Livestock Exchange and signed by Adrian R. Mead." Plaintiffs concede this proffered testimony was not binding on defendants but contend it was proper as showing the investigation made by plaintiffs and their good faith and care in accepting checks drawn upon defendants by Mead.

In addition to the eleven instruments above mentioned, on November 25 and December 2, 1942, Mead gave three similar instruments totaling $144 to three truckers for trucking some of the cattle purchased by him to defendants' sale barn in Cedar Rapids. These checks were also paid.

A few of the cattle purchased by Mead were not shipped to defendants. Mead testified he told defendant Easker on December 3d or 4th that five of the twenty-nine cattle purchased from plaintiffs on December 1st had not been shipped to defendants and that Easker said, "Isn't it usually advisable to have all your stock in that you pay for?" and he replied that it was. Later, plaintiffs proffered the testimony of Mead that, if he were permitted to testify, he would say the cattle purchased from plaintiffs on December 1st were sold by defendants on December 4th. Mead also testified later that all cattle purchased by him from plaintiffs on December 1st were delivered to defendants and that the cattle not delivered were from other purchases.

After defendants' sale on December 4, 1942, there was owing Mead $298, after charging him with checks or drafts paid by defendants, together with commissions, feed, inspection fee, and insurance. Defendants paid Mead this balance and, on December 7, 1942, refused to honor the check Mead gave plaintiff on December 1st for $2,878. There is testimony that defendants knew this check was outstanding before they paid Mead the $298. There were never any cattle purchased by Mead in defendants' possession after their sale on December 4th.

While defendants may not have acted with proper regard for the rights of plaintiffs, we are unable to find any substan-

tial evidence that Mead was defendants' agent. The most that can be said is that defendants made a conditional, oral promise to Mead and to Ryan to honor drafts Mead would draw upon them and that defendants had honored instruments similar to the one they refused to pay. There is no claim that defendants made such a promise to plaintiffs.

There is no competent evidence that Mead purported to act as defendants' agent. In buying and selling the cattle Mead was acting for himself. He made all purchases in his own name. In the memorandum made by plaintiffs of the sale in question, on their own form, the purchaser is written as "M & M," a name by which Mead was known to some. (He had a brother who was associated with him in the purchase of cattle.) For some reason that is not apparent defendants chose to object to the offer of this memorandum and it was not received in evidence. But plaintiffs offered it and have asked us to consider it, together with other exhibits offered by them and excluded. The exhibit is inconsistent with the claim of agency.

It appears conclusively that the cattle purchased by Mead belonged to him. He signed the drafts in his own name and not as agent. He delivered the stock to defendants to sell for him. The profit or loss from resales was Mead's, not defendants'. He paid defendants a commission as well as expense in handling the cattle. After each sale by defendants of cattle consigned to them by Mead they furnished him an account sales showing what his cattle brought and charging him with feed, inspection, insurance, commission, and drafts which they had paid. There is no evidence that defendants paid Mead any of his expenses nor any salary, commission, or other compensation. They had neither control nor right of control over him. They gave him no instructions as to what he should buy nor the price he should pay.

The fact that defendants honored other instruments similar to the check for $2,878 given in similar transactions has no fair tendency to prove that Mead was defendants' agent in those transactions nor in the one directly involved here. The ordinary presumption arising from the payment of drafts is that the maker had credit with the drawee when the drafts were presented.

The evidence shows no manifestation of consent by defendants that Mead should act on their behalf and subject to their control nor consent by Mead so to act. This is the test of agency. See, as tending to support our conclusion, though not entirely analogous, Lee v. Peoples Coop. Sales Agency, 201 Minn. 266, 276 N. W. 214; Witzman v. Sjoberg, 164 Minn. 411, 205 N. W. 257; Seattle Shoe Co. v. Packard, 43 Wash. 527, 86 P. 845, 117 Am. St. Rep. 1064.

We are not called upon to determine whether there is evidence to warrant a finding that Mead was an apparent or ostensible agent or an agent by estoppel because such claim is not made by the pleadings upon which the case was tried. We may say, however, we think the evidence insufficient to warrant such finding.

While the negotiable-instruments act provides that the drawee of a bill of exchange is not liable on the bill unless he accepts the same or at least unconditionally promises in writing to do so (see sections 9588, 9596, Code, 1939), there is respectable authority for the proposition that if one to whom goods are consigned for sale receives the consignment, with notice that the consignor had drawn a draft on him on the credit of the goods, he is bound to accept the draft. The acceptance of the goods is deemed the equivalent of a promise to accept the draft. The consignee is held liable on the theory that under such circumstances the proceeds of the sale of the consignment are received for the payee of the draft, who has a cause of action for money had and received to his use. Such liability is not on the draft but on the contract implied from the consignee's acts. First Nat. Bk. v. Rogers-Amundson-Flynn Co., 151 Minn. 243, 186 N. W. 575, 577, and authorities there cited. See, also, 10 C. J. S. 645, 647, section 171. While we are not to be understood as approving this doctrine (see, however, Pascoe v. Franklin County St. Bk., 217 Iowa 205, 251 N. W. 63), nor do we hold that plaintiffs could have successfully invoked it, we desire to say that such theory was not raised in any pleading filed by plaintiffs nor in brief or argument.—Affirmed.

BLISS, C. J., and OLIVER, HALE, MILLER, SMITH, MANTZ, and MULRONEY, JJ., concur.

WENNERSTRUM, J., not sitting.