BEANE PLUMBING & HEATING COMPANY, appellee, v. D-X SUNRAY OIL COMPANY, appellant; Charles Ellis Bourrett, d/b/a Bourrett Tin & Furnace Shop, Fullerton Lumber Company, Haakinson & Beaty Company, Hooker Glass & Paint Manufacturing Company, C. E. Hardy, Mellon National Bank & Trust Company, Pittsburgh, Pennsylvania, and Cardinal Service Stations, Incorporated, appellees.

No. 49515.

(Reported in 92 N.W.2d 638)

1365

OCTOBER 14, 1958.

J. P. Greve and R. S. Roberts, both of Tulsa, Oklahoma, and Corbett & Corbett, of Sioux City, for appellant.

Goldberg & Nymann, of Sioux City, for Beane Plumbing & Heating Company, appellee.

Spencer M. Day, of Sioux City, for C. E. Hardy, appellee.

J. P. Greve, of Tulsa, Oklahoma, for Mellon National Bank & Trust Company, Pittsburgh, Pennsylvania, and Cardinal Service Stations, Inc., appellees.

Shull, Marshall, Mayne, Marks & Vizintos, of Sioux City, for Fullerton Lumber Company and Haakinson & Beaty Company, appellees.

Hutchinson, Hurst & Duggan, of Sioux City, for Charles Ellis Bourrett, doing business as Bourrett Tin & Furnace Shop, appellee.

Corbett & Corbett, of Sioux City, for Hooker Glass & Paint Manufacturing Company, appellee.

PETERSON, J.—On March 25, 1955, appellant's predecessor in interest, Mid-Continent Petroleum Corporation, entered into a written agreement with Bride Construction Company of Sioux City for erection of a service station upon property in Sioux City, hereinafter described, and later acquired by appellant. Appellant assumed all obligations of the agreement. The con-

tract price was $22,904. The construction of the station was completed in October 1955.

Prior to January 1, 1956, appellant paid Bride Construction Company $19,462 on the contract price, leaving unpaid the sum of $3442.

 Bride Construction Company failed to pay several subcontractors. Most of them are appellees herein. The subcontractors filed liens, but not within sixty days from the completion of their work. Consequently, their liens would only attach as against appellant's property to the extent of any unpaid balance under the contract. Sections 572.10 and 572.11, 1954 Iowa Code.

The liens were filed on the dates stated, and in following amounts: Charles Ellis Bourrett, March 30, 1956, $1231; Beane Plumbing & Heating Company, April 10, 1956, $646; Hooker Glass & Paint Manufacturing Company, May 3, 1956, $610; C. E. Hardy, May 17, 1956, as a subcontractor, $557; as a principal contractor for some extra work, $412.30. All above named subcontractors gave written notice to appellant as to filing of the liens, as provided by statute.

September 4, 1956, plaintiff filed petition for foreclosure of its mechanic's lien. September 24, 1956, C. E. Hardy filed petition for foreclosure of his mechanic's lien. Charles Ellis Bourrett and Hooker Glass & Paint Manufacturing Company filed answers and cross-petitions in one or both of the cases for foreclosure of their mechanic's liens. Appellant filed answer and cross-petition to quiet title against all adverse parties. Under Order of Court the two mechanic's lien cases were consolidated for trial. The issues raised by the answering defendants and cross-petitioners were also consolidated for trial, in order that all issues as between the various mechanic's lien holders and appellant could be, and were, tried in one case.

On February 15, 1956, the Internal Revenue Department of the United States made an assessment for social security, unemployment, etc., taxes against Bride Construction Company in the amount of $3361.33. May 4, 1956, the director served notice of levy on appellant to enforce payment of the assessment. Neither the United States of America nor the Revenue Department was served with notice in these cases. They never filed pleadings nor entered appearance.

On July 21, 1955, appellant entered into written contract with Bride Construction Company for the erection of a service station at Logan, Iowa. The contract price was $24,293. The construction company did not fully complete the contract and in November 1955 appellant expended the sum of $863.77 in completing the station. Prior to that time appellant had paid the contractor $18,090. Deducting these two items from the contract price leaves $5339.23 that appellant still owed Bride Construction Company. However, within the sixty-day period for filing subcontractors' liens three liens were filed totaling $10,284.59. If appellant will ultimately have to pay these liens, Bride Construction Company will owe $5345.36 to appellant. It is the theory of appellant that this item more than offsets the $3442 unpaid on the contract at Sioux City, and therefore there is no balance subject to appellees' liens.

The decree of the trial court held the Logan matter did not enter into the situation and that there was unpaid on the contract for erection of the Sioux City station the sum of $3442. The court established costs and mechanic's liens as against the real estate of appellant in following order and amounts: First: Costs of the proceeding. Second: Claim of Charles Ellis Bourrett for $1231. Third: Claim of Beane Plumbing & Heating Company for $646. Fourth: Claim or lien of the United States, if and when the same is established. Fifth: Claim of Hooker Glass & Paint Manufacturing Company for $610. Sixth: Claim of C. E. Hardy for $557 as a subcontractor. The court also held Hardy was a principal contractor as to $412.30, and foreclosed lien as to said amount directly against appellant.

Fullerton Lumber Company, The Haakinson & Beaty Company and Thermoflector Corporation also filed mechanic's liens. Thermoflector Corporation was never served with a notice and never became a party to the action. Fullerton Lumber Company and The Haakinson & Beaty Company never gave written notice to appellant as to filing of their mechanic's liens as provided by section 572.11. The trial court properly dismissed their claims, and these three parties are not involved in this appeal.

Appellant urges and relies upon three alleged errors for

reversal: 1. In holding that there was an unpaid balance of $3442 on the contract from appellant to the contractor. 2. If there was any amount unpaid on the contract to the contractor, which appellant does not concede, it was covered by the liens of United States of America; it also urges since Government was not a party, no lien should have been established against appellant's property. 3. In holding that C. E. Hardy was a principal contractor to the extent of $412.30.

I. The property involved in this action, and as against which mechanic's liens were established, is described as follows: "S.E. one half of Tax Lot 10 and the S.W. thirteen feet of the S.E. one half of Tax Lot 11, and the S.W. 150 feet of Tax Lot 15, all in Auditor's Plat of Lots 7, 8 and 9 in Block 59, Block 60, and the South one half of Block 61 in Sioux City East Addition, and Blocks 51 and 52 in Sioux City, Iowa; also being described as the Southwesterly 63 feet of Lot 2, and the Southwesterly 150 feet of Lot 3, in Block 51, of the Original Plat of Sioux City, Iowa."

█ With the exception of evidence as to the claim of C. E. Hardy, as a principal contractor, the parties stipulated as to the facts. In addition to $3442 stipulated as balance on Sioux City contract, there was a possible additional item of $220 not settled by the stipulation or any evidence in the case. The trial court reserved jurisdiction for supplemental decree as to this small item. It is not involved in the appeal. In supplemental decree to be entered after this decision has been filed, whatever the trial court holds as to this item shall be final.

There being no question about these figures, the first question in the case is whether or not the possible amount owing by Bride Construction Company to appellant as to the contract for erection of service station at Logan can offset as against the $3442 unpaid on the Sioux City contract.

In connection with the unpaid balance on the Sioux City contract of $3442 the trial court said: "Balance due on this particular contract [Sioux City] fixes the liability of the owner to the subcontractors." We agree with this conclusion.

█ We hold the possible balance due from Bride to appellant at Logan cannot be used as an offset against the $3442 for two reasons: A. The record in this case does not establish the

fact that Bride owed appellant on the Logan job. B. Interpretation of term "balance due" under section 572.11 means the subcontractors have a preferred claim to any balance, prior to any claims of the owner based on other transactions.

A. In connection with the situation at Logan we must accept the record as it appears in the instant case. We cannot project ourselves into the future, assume the happening of certain events and base our decision on such assumption. The record shows the following facts: the contract between appellant and Bride Construction Company as to erection of the service station at Logan; the amount paid to Bride, and balance owing him of $5339.23; the filing of the subcontractors' liens in Harrison County within sixty days of the completion of the work of the subcontractors and on the face of such liens claims are made for $10,284.59; the parties stipulated the mechanic's lien action had been tried in Harrison County District Court, but decision had not been rendered. This is the complete record as to the Logan situation.

The question is whether we are justified, on the basis of this record, to say that Bride owes appellant $3442 or more. There is no evidence in the record as to whether the work of the subcontractors was completed, and as to what amount, if any, will be held to be due from appellant to the subcontractors. Since it was tried in court we can assume there was some controversy about the matter. The situation is too problematical and too remote for us to hold that Bride Construction Company owed appellant at least $3442, or any amount.

B. Interpretation of section 572.11 as to meaning of words "balance due" creates a question of first impression. While normally debtors and creditors may cast a balance between themselves based on more than one transaction, we hold the legislative intent as to said section is that subcontractors, as to liens properly filed and proven, shall have the full benefit of all money due the contractor from the owner on the building or improvement involved.

When the legislature said the subcontractor was entitled to recover "to the extent of the balance due from the owner to the contractor" it placed the subcontractor in a preferred position as to such balance. The section has reference to that

particular job. The agreed amount to be paid for the job should be devoted to paying the cost of the job to the contractor and subcontractors who furnish labor and material, and should not be subject to offsets arising from other transactions between the owner and principal contractor.

■ If the contractor sued the owner for the balance, the owner could successfully defend if proper subcontractor's liens existed. It creates a situation of "no debt" from the owner to the contractor. The debt is to the subcontractor. We will consider this theory at some length in Division II.

■ II. The United States of America tax lien does not attach to the unpaid balance on the Sioux City contract, to the extent of the amount owing to the subcontractors who perfected their lien rights. Fidelity & Deposit Co. v. New York City Housing Authority, 1957, 2 Cir., 241 F.2d 142; United States v. Bess (June 9, 1958), 357 U. S. 51, 78 S. Ct. 1054, 2 L. Ed.2d 1135; Wolverine Insurance Co. v. V. Lee Phillips, District Director of Internal Revenue, D. C. N. D. Iowa (August 12, 1958), 165 F. Supp. 335, Judge Graven.

In recent federal court decisions the theory of "no debt" has been developed and approved. This means there is no fund or property to which the Government tax lien can attach.

In case of Wolverine Insurance Co. v. Phillips, supra, Judge Graven approved the doctrine. Mr. and Mrs. Loren H. Mahoney entered into a contract with Ericksson & Kochen for the erection of a home at a cost of $30,591. The home was erected and in accordance with the contract the owners made payments to the contractor as the work progressed. They paid $20,568.91, leaving unpaid the sum of $10,168.46. However, the contractors had not paid the subcontractors, and mechanic's liens were filed within the sixty-day period in the amount of $19,248.02. As a part of the contract between the owners and the contractors a surety bond as to performance, and payment of subcontractors, was issued by Wolverine Insurance Company. The insurance company paid the subcontractors and took an assignment from the contractors as to the unpaid balance of $10,168.46 owing by the owners. Judge Graven held there was "no debt" as between the owners and the contractors. In view of the amount owing to the subcontractors the fund was the property of the

subcontractors, not the contractor. Consequently there was no property of the contractor to which the tax lien could attach.

Similarly, to the extent of their claims, the fund of $3442 in the hands of appellant was not the property of Bride Construction Company; it was the property of the subcontractors. The lien of the United States of America was against Bride Construction Company, but there was "no debt" owing to said construction company against which the lien could attach. We should observe at this point that the subcontractors' liens of the four appellees who perfected their mechanic's liens do not total the sum of $3442 so the "no debt" theory applies only to the extent of the amount owing to such subcontractors. We will make the distinction as to computations later in this decision.

Judge Graven's decision was based on the Circuit Court decision of Fidelity & Deposit Co. v. New York City Housing Authority, and the Supreme Court opinion of United States v. Bess, both supra.

In Fidelity & Deposit Co. v. New York City Housing Authority, supra, at page 147 of 241 F.2d, the court said: "We are satisfied, then, that * * * the taxpayer-contractor had no right to the withheld fund. Of necessity, it follows that it had no 'right to property' to which a federal tax lien might attach and the government's claim must fail."

Judge Graven said with reference to United States v. Bess, supra, at page 353 of 165 F.Supp., "The United States Supreme Court has but recently stated that the tax lien statute does not create any property rights but merely attaches the rights created under the applicable state law. * * * Therefore, in the present case [Wolverine Ins. Co. v. Phillips] in order for the Government's tax liens to be of avail to it, there must at some time have been created under state law some enforceable right in behalf of the Contractor against the Owner for money due under the contract."

In the Bess case the United States Supreme Court stated at page 55 of 357 U. S., page 1057 of 78 S. Ct., page 1140 of 2 L. Ed.2d: "Since §3670 creates no property rights but merely attaches consequences, federally defined, to rights created under state law, Fidelity & Deposit Co. v. New York City Housing

Authority, 2 Cir., 241 F.2d 142, 144, we must look first to Mr. Bess' right * * * as defined by state law."

We therefore modify the decision of the trial court to the extent it attached the lien of the United States of America to the fund prior to liens of subcontractors Hooker Paint & Glass Manufacturing Company and C. E. Hardy.

■ III. Mr. C. E. Hardy has been engaged in service-station-equipment repair business in Sioux City for more than twenty years. Under contract with Bride Construction Company he installed the tanks, pumps, hoist, etc., at the station in Sioux City involved in this action. He completed his contract with Bride Construction Company on Saturday, July 9, 1955. That night a flood occurred in Sioux City and it covered the D-X station with two feet of water. The tanks had not yet been filled with gasoline and the flood floated them out of the ground and ruined all the connections and piping attached to the tanks.

Mr. Yarger, who had charge of the station for appellant, instructed Mr. Hardy to repair all the damage and to reinstate and reconnect the tanks in the same condition as they had been before the flood. Mr. Hardy proceeded to do so and completed the work in about twelve days. The cost of the repairs was $412.30. The trial court entered judgment against appellant in favor of Mr. Hardy as a principal contractor in connection with this item. Appellant challenges this judgment, alleging the evidence does not support the claim.

In connection with the needed repairs to make the station usable after the flood the record discloses that Bride Construction Company had no part in the arrangements nor the work. The representative of appellant in Sioux City contacted Mr. Hardy direct, and requested him to make the repairs after the flood. He completed the reinstallation and is entitled to be paid therefor.

The decision of the trial court foreclosing a mechanic's lien on behalf of Mr. Hardy as a principal contractor against appellant is sustained by the evidence in the record and is correct.

IV. We modify the decision, and instruct that decree be rendered by the trial court foreclosing the mechanic's liens against the property heretofore described to the extent of the

fund of $3442 as follows: 1. Charles Ellis Bourrett, $1231. 2. Beane Plumbing & Heating Company, $646. 3. Hooker Glass & Paint Manufacturing Company, $610. 4. C. E. Hardy, as a subcontractor, $557. 5. Balance of $398 is subject to tax lien of United States of America to be collected by proper further proceedings herein, or by independent action.

No interest shall accrue on above items until judgment is rendered in accordance with this decision, since they are a part of a specific fund allocated by statute to the parties involved.

Judgment for court costs in the District Court shall be rendered against defendant. There is no reason for deducting the costs from the fund belonging to the subcontractors, and possibly, to United States. Defendant filed answer and cross-petition, defended vigorously, and did not prevail.

The trial court shall also render judgment and foreclose mechanic's lien against appellant in favor of C. E. Hardy, as a principal contractor, for $412.30, together with statutory interest from May 17, 1956, date of filing mechanic's lien.— Modified and Affirmed.

GARFIELD, C. J., and BLISS, WENNERSTRUM, HAYS, THOMPSON, LARSON, and LINNAN, JJ., concur.