PAY-N-TAKET, INC., appellant, v. KENNETH E. CROOKS et ux., appellees.

No. 52137.

OCTOBER 18, 1966.

Adam A. Kreuter, of Cedar Rapids, for appellant.

Ted V. Ruffin and R. Fred Dumbaugh, both of Cedar Rapids, for appellees.

MOORE, J.—Plaintiff's equity action seeks to foreclose a mechanic's lien filed April 23, 1962, and amended March 10, 1964. Plaintiff's $1596.64 claim is for material furnished between September 30, 1960, and February 3, 1961, and used in the last of a series of five houses built under the name of O. E.

Slade or Slade Construction Company. Following construction of. the fifth house defendants, husband and wife, took title and possession of that property. Plaintiff's petition, as amended, alleges the materials were furnished at defendants' instance, they were partners or joint adventurers with Slade and they were indebted to him when the lien was filed.

The trial court found against plaintiff on each of its contentions, denied the lien and entered judgment for defendants. Plaintiff has appealed. Dorothy I. Crooks' only connection with this controversy arises because she with her husband took title and possession of the house after its completion. For clarity we will refer to Kenneth Crooks as defendant.

The briefs establish little, if any, disagreement regarding the applicable principles of law. Plaintiff-appellant asserts the trial court failed to (1) properly evaluate the evidence, (2) apply the applicable legal principles to the evidence and (3) do equity.

Being in equity, our review is de novo. Rule 334, Rules of Civil Procedure. In equity cases, especially when considering the credibility of witnesses, we give weight to the fact findings of the trial court but are not bound by them. Citation of authority is unnecessary. See Rule 344(f)(7), Rules of Civil Procedure. Much of the record is the testimony of plaintiff's manager, defendant and Slade. Some, although not many, conflicts appear therein. The following is a fair summary of the evidence as we understand it after careful study of the record.

In 1960 Edgar O. Slade, a carpenter, quit his job at Collins Radio Company in Cedar Rapids as he wanted to build houses. He had some equipment and had tools but no money. He was known by Bill Stanfill, manager of plaintiff, Pay-N-Taket Lumber Company, and had done some subcontracting for that company. He had little education and was inexperienced in business management. Slade contacted defendant, with whom he had some acquaintance, to see if Crooks could arrange funds for him.

Crooks was a member of the Iowa and Linn County Real Estate Boards and had been in the real-estate business in Cedar Rapids for twenty years.

Slade, as plaintiff's witness, and defendant each testified regarding the details of the original conversation and the oral agreement made by them. Slade asked defendant about a partnership but Crooks said he was in the real-estate business and did not care to go in as a partner with Slade. Defendant advised Slade he had lots listed for sale, owned by Hazel Johnson, which could be bought and houses erected thereon. They agreed Crooks would arrange some financing to build houses on these lots, he would keep Slade's books for which he would be compensated $200 per house and would sell the houses at a commission of six percent in accordance with the standard real-estate practice. As each house was built Slade gave defendant a signed uniform listing agreement.

Finances for the construction of the first house were obtained by Slade, through the efforts of defendant, from one Lanning whom both had known previously. Lanning agreed to take title to the lot and furnish funds with which to build the first house. Under the arrangement between Slade and defendant the funds furnished by Lanning were paid to and handled by defendant as trustee. He deposited these funds in a trust account and paid therefrom at Slade's direction. All materials and equipment were purchased by Slade in his name or as Slade Construction Company. The bills were mailed to defendant's office, opened by Slade and when approved by him were then paid by check signed by Crooks as trustee. Slade built the houses according to plans procured by him, selected and purchased materials and equipment as he believed necessary, hired workmen and subcontractors, and was in sole charge of the house construction. The workmen obtained their paychecks at defendant's real-estate office. Slade made weekly withdrawal from the trust fund in the form of checks signed by Crooks as trustee. Most of them were for $75 but some for larger amounts. Slade drew one $400 check for the purpose of taking a vacation. Quarterly tax returns, prepared by Crooks, were made in Slade's name.

Upon completion of the first house it was sold for $18,500. The profit of $450 went to Slade. Defendant received a real-estate commission for selling this house.

Plaintiff did not furnish materials for construction of the first house. After some conversation between plaintiff's manager and Slade, including price comparisons, Slade began buying materials from plaintiff. He continued doing so during construction of the last four houses. Materials furnished by plaintiff on houses two, three and four were paid by checks signed by defendant as trustee. Some were delivered to plaintiff by defendant. In the original conversation Slade told plaintiff's manager he was building houses to sell.

Houses two and three were built under the same general plan as used in building number one with the exception different individuals, friends of defendant, furnished the necessary funds. Number two house sold for $18,950 and number three for $19,950. Apparently no profit was made on these houses. Defendant and wife eventually took title to number three and were using it as rental property at time of trial. How this came about is not clear in the record.

Funds for building houses four and five were obtained from different sources but were built together. Four was completed and sold for $19,500. Before five was entirely completed Slade moved to Norfolk, Virginia, where he remained only a few months and then returned to Cedar Rapids.

House five was being financed with funds obtained by defendant from one Morris and others. After Slade went to Virginia defendant arranged for additional funds and personally assumed obligations totaling more than $19,500, the listed price of house five. Defendant then sold the house in which he had been living and with his wife took title and possession of house five where they were living at trial time. Upon his return from Virginia Slade approved this transaction. Plaintiff's witness Slade testified he relied entirely on defendant to keep the books but felt nothing was owing to him from the construction and disposal of the five houses. Apparently the equipment bought by Slade and paid for out of trust funds remained his property.

■ I. Plaintiff contends defendant as principal purchased materials used in house five through Slade as agent. The burden to prove this claim is upon plaintiff. Lamson Bros. & Co. v. Rurup, 190 Iowa 38, 179 N.W. 848; 3 Am. Jur.2d, Agency,

sections 348, 359; Rule 344(f)(5), Rules of Civil Procedure.

An agency results from the manifestation of consent by one person, the principal, that another, the agent, shall act on the former's behalf and subject to his control, and consent by the other so to act. Brown v. Schmitz, 237 Iowa 418, 424, 22 N.W.2d 340, 343; Reed v. Bunger, 255 Iowa 322, 328, 122 N.W. 2d 290, 294; 3 Am. Jur.2d, Agency, section 1; 2 C. J. S., Agency, section 1.

An agency may be proven not only by direct evidence of an agreement between the parties but also by circumstantial evidence, such as their words and conduct, from which an intention to create an agency may be fairly implied. Brown v. Schmitz, supra, 237 Iowa 418, 424, 22 N.W.2d 340, 343, and citations. The question of whether there was a principal-agent relationship ordinarily is one of fact. Reed v. Bunger, supra, 255 Iowa 322, 329, 122 N.W.2d 290, 295, and citations.

Plaintiff's claim Slade was an agent and merely a "front" for defendant is not established by the evidence either direct or circumstantial.

II. Plaintiff next alleges and argues Slade and defendant were partners or joint adventurers. A partnership or joint adventure, a limited partnership, is usually a contract where two or more persons place their money, labor and skill in some business to be carried on by the partnership, with an agreement to divide the profits and share the losses. McCarney v. Lightner, 188 Iowa 1271, 175 N.W. 751; Farmers & Merchants Nat. Bk. v. Anderson, 216 Iowa 988, 250 N.W. 214; Myers v. Blinks, 232 Iowa 1238, 1240, 7 N.W.2d 819, 821, and citations. To constitute such a contract no particular form of expression or formality of execution is necessary. It need not be express but may be implied in whole or in part from the conduct of the parties. Smith, Landeryou & Co. v. Hollingsworth, 218 Iowa 920, 251 N.W. 749.

Plaintiff relies heavily on the evidence which establishes defendant on two or more occasions, in company with Slade, personally delivered checks in payment of materials to plaintiff and on one visit to the building site with a prospective purchaser criticized Slade for the type of a cabinet he was build-

ing in a kitchen. The record also discloses defendant sometimes deposited small amounts of his own funds to the trust account to cover checks and later withdrew said sums when the lenders furnished more money.

Both Slade and defendant testified Crooks refused to engage in a partnership with Slade. Both denied there was a partnership of any kind. There was no partnership name, no partnership books or tax returns, no sharing of profits or losses and no control over management by defendant.

Like the trial court, we conclude plaintiff failed to meet its burden to prove a relationship of partners or joint adventurers between Slade and defendant.

III. Having failed to prove primary liability of defendant, plaintiff's claim becomes that of a subcontractor. Its lien was not filed within sixty days from completion of work on the fifth house. Consequently, its lien would only attach as against defendant's property to the extent of any money owed to Slade by defendant at the time the lien was filed and notice given thereof. Beane Plbg. & Htg. Co. v. D-X Sunray Oil Co., 249 Iowa 1364, 1367, 92 N.W.2d 638, 640; sections 572.10 and 572.11, Code 1962.

Plaintiff put in evidence ledger sheets kept by defendant showing expenditures made during construction of the five houses. Taken alone they show a large balance owing to Slade but this cannot be done. Defendant testified many expenditures were made which had not been entered on these ledger sheets. He further testified he put all money received into the bank trust account and paid out the entire amount thereof as house construction and necessary expenses incident thereto, including bonuses and interest to lenders, insurance, gas, water and electricity. His bookkeeping fee and real-estate commissions were also paid from the trust account.

Defendant testified his bank records would disclose a full and complete record of money received and all expenditures and expressed a willingness to produce those records. He was not required to do so and they are not a part of the record.

Defendant testified in detail the amounts paid or assumed by him to cover costs of house five. They total more than $19,-

500, the listed price of that property. He stated he owed Slade no money when plaintiff filed his lien and gave notice thereof. The trial court properly found there was no setoff of prior existing debt between defendant and Slade.

Plaintiff failed to meet its burden to establish the amount, if any, owing to Slade when plaintiff filed its lien.

IV. Plaintiff's argument the trial court failed to do equity and that unjust enrichment to defendant resulted is without merit. Plaintiff saw fit to trust Slade. It made no inquiry regarding the relationship of defendant and Slade. It could have filed its lien within sixty days after completion of the work and been protected. Section 572.9, Code 1962. The mechanic's lien statutes are designed to protect the owner as well as the contractor and subcontractor. Plaintiff having waited over a year and a half lost the protection given by the statutes.

We find no reason for disturbing the decree and judgment of the trial court.—Affirmed.

All JUSTICES concur.