Marvin GATZEMEYER et al., Appellants,

v.

Elmer VOGEL et al., Appellees.

No. 76–1136.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 9, 1976.

Decided Nov. 24, 1976.

Victor V. Sprengelmeyer, Dubuque, Iowa, for appellant; Peter W. Klauer, Dubuque, Iowa, on brief.

Glenn L. Norris, Des Moines, Iowa, for appellee; Lex Hawkins, Des Moines, Iowa, Charles L. Elson, Leon, Iowa, on brief.

Before HEANEY, WEBSTER and HEN-LEY, Circuit Judges.

HENLEY, Circuit Judge.

Marvin Gatzemeyer, Marlene Gatzemeyer, his wife, and Henry Neuhaus appeal from a judgment of the United States District Court for the Southern District of Iowa[1] dismissing a complaint filed by Mr. and Mrs. Gatzemeyer and by Taylor & Martin, Inc.[2] against Elmer Vogel, Lillian A. Vogel, his wife, and Arlan Vogel, the son of Elmer and Lillian Vogel.

Mr. and Mrs. Gatzemeyer sought specific performance of an alleged contract for the conveyance to them by the Vogels of three contiguous farms in Iowa which contained in the aggregate about 1500 acres of land. More than half of this acreage was included in what is called the Rockhold Farm, which was owned by Arlan Vogel. The other lands were included in the McFarland Farm and the Williams Farm which were owned by the elder Vogels; alternatively, the Gatzemeyers sought damages for breach of contract. Taylor & Martin sought to recover $30,000.00 by way of a real estate commission on the transaction.

The case was tried to the court without a jury. At the conclusion of the evidence plaintiffs tendered a proposed amendment to the complaint seeking, as alternative relief, specific performance of the alleged contract as it applied to the McFarland and Williams Farms.

The district court's jurisdiction of the case was based on diversity of citizenship and the requisite amount in controversy, 28 U.S.C. § 1332(a), and the rights of the parties were governed by Iowa law.

The district court filed a full memorandum opinion incorporating its findings of fact and conclusions of law. The district court found ultimately that a written instrument executed on February 16, 1973 by Mr. and Mrs. Gatzemeyer, Elmer and Lilli-an Vogel and Delbert Peterson, an agent of the real estate company, was not a final and binding contract, that in any event it was not binding upon Arlan Vogel, and that neither total nor partial specific performance nor damages should be awarded to the plaintiffs.[3] A judgment dismissing the complaint in its entirety was entered, and this appeal followed.

There is no dispute about the background facts of the case. Arlan Vogel and his wife, Martha, who is not a party to this litigation, purchased the Rockhold Farm in 1966. In 1968 the elder Vogels purchased the adjoining McFarland and Williams Farms. Thereafter, Arlan and Martha conveyed to Elmer and Lillian eleven acres of the Rockhold Farm as a homesite.

The three farms were adapted for operation as a unit, and they were so operated by Arlan Vogel and his father until 1972 when Elmer Vogel was injured in an accident involving a farm tractor and was forced to retire from active farming. His equipment was sold at auction with the sale being conducted by Mr. Peterson, who has been mentioned.

Thereafter, Peterson indicated to the Vogels that Taylor & Martin had a prospective purchaser for a large block of Iowa land, and Peterson suggested that all three farms be offered for sale as a unit. On July 12, 1972 Elmer and Lillian Vogel signed listing contracts covering the McFarland and Williams Farms, and Arlan Vogel signed a similar contract covering the Rockhold Farm. Martha Vogel, Arlan's wife, did not sign the listing contract executed by her husband. Those contracts gave Taylor & Martin the exclusive right to sell the farms, and it was stipulated that Taylor & Martin would receive for its services a commission of 6% of the sales price or prices.

1. The Honorable William C. Stuart, United States District Judge.

2. During the time with which we are concerned Taylor & Martin, Inc. was a Nebraska corporation, the stock in which was owned by appellant, Henry Neuhaus. Mr. Neuhaus, rather than the corporation, appears as a party appellant here.

3. Having concluded that the case was not a proper one for either complete or partial specific performance, the district court refused to permit the amendment to the complaint tendered by the plaintiffs to be filed.

The prospective purchaser whom Peterson had in mind in 1972 seems not to have been interested in buying the Vogel farms. However, in early 1973 Peterson showed the lands to Mr. Gatzemeyer who at the time was representing a farming corporation which was a prospective purchaser of the properties. That corporation turned out not to be interested in buying the lands, but Mr. and Mrs. Gatzemeyer conceived the idea of buying the farms for themselves.

Such a purchase would obviously require a large down payment, which turned out to be $50,000.00. The Gatzemeyers did not have such a large sum in cash, but Mr. Gatzemeyer owned a farm in Nebraska which was subject to a mortgage securing an indebtedness of $46,000.00. In order to enable the Gatzemeyers to make a $50,-000.00 down payment on the Iowa lands, Taylor & Martin agreed to purchase the Nebraska farm for $96,000.00; such a purchase would have paid off the $46,000.00 mortgage and would have left the Gatzemeyers with $50,000.00 to pay to the Vogels as a down payment on the Iowa properties.

It was agreed that the Gatzemeyers, Peterson and the Vogels would meet at Elmer Vogel's home on February 16, 1973 and complete negotiations. Arlan Vogel was supposed to be present at the meeting, but he did not appear. Both Peterson and the Gatzemeyers were aware that Arlan owned some of the land involved, and that Elmer and Lillian were not in a position to convey good title to all three farms.

At the meeting held on February 16 negotiations took place between the Gatzemeyers, on one hand, and Elmer and Lillian Vogel, on the other hand. Peterson took part in the negotiations. It was agreed among the parties present that the Gatzemeyers would buy the three farms for a total price of $500,000.00. There was never any discussion of the possibility that the Gatzemeyers might buy the McFarland and Williams Farms without the Rockhold Farm or about the price that the Gatzemeyers might have been willing to pay and the price that Elmer and Lillian Vogel would have been willing to accept for the McFarland and Williams Farms standing alone.

In the course of the negotiations Elmer Vogel represented that he had the authority to speak for his absent son, Arlan, and indeed represented that the Rockhold Farm really belonged to him, although title to it was in the name of Arlan.

The $50,000.00 down payment would have left a principal balance of $450,000.00 to be paid on the over-all contract price of $500,-000.00. That balance was to be discharged by fifteen annual payments of $13,334.00 each, and the final remaining balance was to be discharged in a lump sum at the end of fifteen years. The balance of the obligation remaining from time to time unpaid was to bear interest at the rate of 5.5% per annum. Taylor & Martin was to receive a commission of $30,000.00 to be paid by the sellers.

At one time during the negotiations, Lillian Vogel suggested that Arlan Vogel be consulted, and Mr. Gatzemeyer stated that there was no point in proceeding further in the absence of Arlan. Had Mr. Gatzemeyer adhered to that sound position, this lawsuit would never have arisen. However, as the district court found, both sides and the real estate agent were in a hurry to close the deal.

With the terms of the sale agreed upon, at least in general, Mr. Peterson undertook to put the agreement into writing using in that connection a printed form of "Purchase Agreement" which he had with him. The first page of the agreement was essentially an offer by the Gatzemeyers to purchase the three farms for $500,000.00 on the terms expressed in Section 5 of the contract which appeared on the second page of the instrument. The offer stipulated that possession of the land was to be delivered by March 1, 1973 and the improvements were to be turned over to the purchasers by April 1 of that year. The sellers were to pay 1972 taxes and taxes later accruing were to be paid by the buyers.

Section 5 of the agreement set out the terms of the contract essentially as we have mentioned them; however, Section 5 also

purported to include the obligation of Taylor & Martin to buy Mr. Gatzemeyer's Nebraska farm for $96,000.00. Of the $50,-000.00 down payment, $13,000.00 was to be paid on March 1, and the balance was to be paid "on closing." The first of the annual payments on the balance was to fall due on March 1, 1974. It was stipulated in Section 5 that Elmer Vogel would "see to it" that Arlan would "deed back" the Rockhold Farm to Elmer before March 1, 1973.

Section 5 was followed by an "Acceptance" of the offer to purchase made by the Gatzemeyers. That "Acceptance" was signed by Elmer Vogel and Lillian Vogel. They signed in their own right and did not purport to sign as agents of Arlan Vogel. The "Acceptance" stipulated that the sellers would pay a $30,000.00 real estate commission; of that commission $20,000.00 was to be paid when the transaction was closed, and the remaining $10,000.00 was to be paid on February 15, 1974.

The district court described the agreement as being "highly inartful and confusing." To that observation we will add the comment that the agreement was silent in certain areas in which it would normally be expected to speak in connection with a transaction involving a $450,000.00 obligation to be liquidated over a fifteen-year period. For example, although the agreement states that the transaction would be closed on or before April 1, 1973, it does not say whether the sellers were to deliver a deed at that time or to place a deed in escrow, or whether the $450,000.00 obligation was to be evidenced by one note or by a series of notes or whether the obligation was to be secured by a mortgage or deed of trust or by a vendor's lien expressly retained, or whether it was to be without any security other than an equitable lien; and nothing is said about the remedies of the sellers in event of default by the buyers or their successors in title.

After the agreement was signed, the Gatzemeyers and Mr. Peterson took their departure. Later in the day Arlan returned home, went over the contract with his father and refused to accept it. The district court found that Arlan's unwillingness was due to the small size of the down payment and the small amounts of the fifteen annual payments.

On February 17, 1973 Taylor & Martin and the Gatzemeyers were advised that Arlan had rejected the contract, and that Elmer had no right to sell the properties without the consent of Arlan.

On February 28 Mr. Gatzemeyer drew a check in the sum of $13,000.00 on the First National Bank of Bancroft, Nebraska, which check was made payable to Gatzemeyer's attorneys, and which bore the notation that it was a down payment on the Vogel property. The payees tendered the check to the Vogels, but the tender was rejected.

The Gatzemeyers made no further tenders to the Vogels, and Taylor & Martin did not buy the Nebraska farm owned by Mr. Gatzemeyer. The suit was filed on March 14, 1973.

After stating the facts in the case, substantially as we have stated them here, the district court found that the agreement signed on February 16, 1973 was "preliminary to a final contract and that a subsequent closing was contemplated by the parties."

The district court then went on to hold that with respect to both the claim for specific performance and the alternative claim for damages a necessary predicate for relief was a legally binding contract for the sale of the land. The court next stated that the plaintiffs had tried the case on the theory that Elmer Vogel was the agent of Arlan Vogel, and that Arlan was bound by the contract even though he had not signed it.

The district court correctly stated that in Iowa, as elsewhere, the question of agency *vel non* is one of fact, *Pay-N-Taket, Inc. v. Crooks*, 259 Iowa 719, 145 N.W.2d 621 (1966); *Spencer Concrete Products Co. v. City of Spencer*, 254 Iowa 87, 116 N.W.2d 455 (1962), and that the burden of establishing the existence of the relationship is upon the party who asserts it, *Ioerger v. Schu-*

*macher,* 203 N.W.2d 572 (Iowa 1973); *Martin v. Jaekel,* 221 Iowa 1256, 188 N.W.2d 331 (Iowa 1971).

There was no evidence that Arlan Vogel had ever expressly authorized his father to enter into a contract on the former's behalf for the sale of the Rockhold Farm, and the district court found that the plaintiffs had not established that Elmer Vogel had any implied authority to bind Arlan, and noted in that connection that apparent authority on the part of an agent must be established by evidence of the acts or statements of the alleged principal and not by evidence of what the alleged agent said or did. *See Chismore v. Marion Savings Bank,* 268 N.W. 137 (Iowa 1936), cited by the district court.

Under Fed.R.Civ.P. 52(a), we are required to accept the findings of the district court on questions of fact unless the findings are "clearly erroneous," as that term is now generally understood. And in a diversity case we accord great weight to the conclusions of a local judge on questions of local law.

It appears to us from a careful consideration of the opinion of the district court that the court was of the view that the agreement negotiated on February 16, 1973 was indivisible and would not be binding on either side unless Arlan was bound by the acts of his father or became bound by a later ratification of or participation in the transaction. We do not disagree with that characterization.

It is obvious from what has been said that Arlan Vogel never ratified the contract, and that the transaction was never closed. The only evidence that Elmer Vogel had any authority to act for his son consists of what Elmer did and said, and as the district court correctly observed, Elmer's agency could not be established on that basis. Hence, the finding of the district court that Elmer was not Arlan's agent was clearly correct.

Since under the district court's characterization of the contract, which we accept, neither the Gatzemeyers nor the Vogels, including Elmer and Lillian, were bound by the contract, it follows that the Gatzemeyers were not entitled to either specific performance, complete or partial, or to damages and that Taylor & Martin did not earn any commission.

The judgment of the district court is affirmed.