JAMES FOLEY, Appellee, v. FRANK A. NIMOCKS, Appellant.

**PRINCIPAL AND AGENT: The Relation—Purchasing Property for**
1 **Another—Sales.** A contract by which one party agrees to purchase personal property for the other and the other agrees to receive it and pay the price on delivery, is a contract of agency for such purchase, not a contract for the sale of the property, and manifestly so where the party making the purchase is acting for the other and not for himself. So *held* in a transaction involving the purchase of corporate stock.

SALES:    Transfer of Title—Purchase for Another.   Personal prop-
2   erty purchased by one in his own name, with his own funds, but
    purchased for another at such other's request and under an agree-
    ment to reimburse the one purchasing, belongs to the one for whom
    purchased.   So.*held* in the purchase of corporate stock.

PRINCIPAL AND AGENT:   Rights of Agent—Reimbursement for
3   Losses, Etc.   A principal is under obligation to reimburse his
    agent for all good-faith disbursements made and losses suffered in
    the proper execution of the agency.

PRINCIPLE APPLIED:   Plaintiff purchased *in his own name*
and with his own funds certain corporate stock, doing so at de-
fendant's request and on defendant's promise to take up such
stock and pay plaintiff therefor, with interest, at a certain time.
Later, the corporation became insolvent, and, by reason of irregu-
larities in its organization, plaintiff, along with other stockholders,
was compelled to pay to creditors of the corporation an additional
amount on his stock.   *Held,* the contract created the relation of
principal and agent, and that defendant must reimburse plaintiff,
not only for the amount paid for the stock, but for the additional
amount paid thereon.

DAMAGES:   Measure of Damages—Breach of Contract—Proximate
4   Results.   Recovery may always be had for that loss which is the
    direct result of the breach of a contract.

PRINCIPLE APPLIED:   Plaintiff purchased in his own name
corporate stock, doing so at defendant's request and on defendant's
promise to take said stock and pay plaintiff therefor by a certain
time.   Defendant breached his contract.   Later, the corporation
failed.   Irregularities were then discovered in the organization of
the corporation, such as that the stockholders were rendered liable
to the creditors of the corporation for an additional amount on
their stock.   *Held,* the additional assessment paid by plaintiff was
the direct result of defendant's breach of his contract, and de-
fendant was liable therefor.

*Appeal from Wapello District Court.*—D. M. ANDERSON,
Judge.

FRIDAY, APRIL 7, 1916.

THIS is an action at law to recover the amount paid by
plaintiff for two shares of the capital stock of a corporation,
and a stockholder's loss suffered by him, on account of the

purchase's being made for the defendant, at his instance and request, and upon his promise to pay the total cost to plaintiff with interest as plaintiff alleges. Plaintiff claims, also, that it was the agreement between them that he should take this stock in his own name and handle it for defendant until such time as defendant could pay plaintiff and take it off his hands, which time defendant promised would not be later than April 1, 1911. There is a difference between the parties as to the nature and effect of the agreement. The facts are more fully stated in the opinion. A jury was waived, and trial had to the court. The court found for plaintiff for the amount claimed, and rendered judgment against the defendant therefor, and from such judgment the defendant appeals.—*Affirmed.*

*Work & Work* and *Gilmore & Moon,* for appellant.

*J. J. Smith* and *E. R. Mitchell,* for appellee.

PRESTON, J.—1. The petition alleges that before, but about, April 20th, 1910, defendant orally requested plaintiff to purchase for him $200 worth of stock in the Union Iron Works, a corporation, which stock defendant

1. PRINCIPAL AND AGENT: the relation: purchasing property for another: sales.

agreed to take from plaintiff not later than April, 1911, and pay the total cost of same, including interest thereon, which oral agreement was, on April 20, 1910, confirmed in a letter written by defendant to plaintiff; that, relying on the oral agreement and the letter, plaintiff did, about April 20, 1910, purchase stock in the Union Iron Works to the amount of $400, as evidenced by certificates Nos. 31 and 33 for two shares each, at par value of $100 a share, and plaintiff claims that one of said stock certificates for two shares of stock was purchased for defendant in accordance with the agreement; that the iron works failed, and plaintiff was compelled to pay, on September 9, 1913, the sum of $28.75 per share, making an additional amount of $57.50 chargeable to the shares so pur-

chased; that defendant has neglected to take up said stock in accordance with his agreement.

The answer was a general denial, and alleged that, on April 20, 1910, defendant was a director of the Ottumwa Commercial Association, and that, at the request of one Keyhoe, who was the manager of the iron works, he (defendant) undertook to sell some of the unissued capital stock of the iron works; that defendant was not then a stockholder in the iron works, but that he undertook the sale of its stock solely for the purpose of benefiting the iron works, and, incidentally, the city of Ottumwa, by securing additional funds for the iron works which would permit it to increase its business and give employment to more people; that he was informed that plaintiff was already the owner of two shares in said iron works, and that he approached plaintiff to try to induce him to buy some additional stock; that, on the date last mentioned, defendant solicited plaintiff to buy some additional stock, and it was agreed between them that, if plaintiff would purchase and pay for four shares of the stock of the iron works, defendant was willing at that time to pay to the plaintiff the total cost of such two shares to plaintiff, with interest thereon from the time said four shares were purchased by plaintiff until two of the shares were turned over to defendant; that plaintiff did not, on or before April 1, 1911, turn over to defendant, or offer to turn over to him, the two shares of stock, and this has never been done.

It is conceded that plaintiff never did tender the stock to defendant. The letter above referred to is as follows:

"Ottumwa, Iowa, April 20th, 1910.
"Rev. James Foley, City.

"Dear Sir: I write you this letter so that you will understand after my conversation with you that I am willing to take $200 worth of the stock of the Union Iron Works off your hands not later than April 1st, 1911, and will pay you at that time the total cost of the same to you, including the

interest on the $200 from the time it is taken until turned over to me. It is understood that I do this voluntarily as you have agreed to handle this additional amount for me until I can take the same. In the mean time the stock to be handled by you in any way you see fit.

"Yours respectfully, Frank A. Nimocks."

Defendant concedes here that plaintiff's evidence was sufficient to establish the contract as stated in the petition. It is undisputed that the iron works went into bankruptcy in January, 1912, and that certain creditors claimed that the stockholders were personally liable because of irregularities in the organization of the iron works, and that plaintiff gave his check for $115 to settle the proportion due on the four shares of stock in plaintiff's name. The findings of the trial court upon disputed questions of fact are, of course, of the same force as a finding by a jury; and, in fact, appellant says in argument that he does not intend to base any argument upon any disputed questions of fact, but the argument will be based on undisputed evidence, and especially upon the contract pleaded by plaintiff and the letter before set out; that it is only with reference to the construction of the contract and the rules of law that determine the case that the parties differ.

The same day the letter was written, Mr. Keyhoe, manager of the iron works, called on plaintiff, and plaintiff gave to him a check for $200, receiving therefor Certificate of Stock No. 31 in the iron works, showing that plaintiff was the owner of two shares, transferable only on the books of the corporation by the holder in person, or by attorney, upon surrender of this certificate properly indorsed. A blank assignment form was printed on the back. On April 29, 1910, he bought two other shares of stock, represented by another certificate, No. 33, in like form as the other. Plaintiff says, and it is undisputed, that he bought these additional two shares on the strength of defendant's having spoken so well of the iron works.

Two or three months after the time for payment to plaintiff from defendant had elapsed, as plaintiff claims, he called defendant by phone and asked him if he was prepared to take up the matter. Defendant, being busy, requested plaintiff to wait a little longer. In two or three months, plaintiff called at defendant's office three or four times, but did not see him, except. that, on one occasion, plaintiff saw defendant, and defendant requested that plaintiff let the matter go for a while. In the conversation between them in regard to their contract, defendant never denied his liability, but always requested more time.

Later, and in the fall or winter of 1911, or early in January, 1912, the plaintiff placed the matter in the hands of his attorney for collection. Letters passed between plaintiff's attorney and defendant, and in one of August 10, 1912, defendant said:

"As I said to you before, if Father Foley (plaintiff) bought $400 worth of stock the last time he bought, and I agreed to take $200, I would necessarily be bound by that, and I would not try to have Father Foley stand the loss under any consideration, if he took this for me, *as I rather think he did.*"

There is no evidence that plaintiff ever talked with defendant about making a settlement of the claim of creditors against the stockholders of the iron works. Defendant did not own any stock or have any interest in the iron works at any time prior to the purchase of the stock in question.

It is contended by appellant that, if the contract was one by plaintiff to sell and defendant to purchase two shares of stock, then delivery of the certificate by plaintiff and payment of the consideration by defendant were concurrent acts, and neither could be said to be in default until the other had performed or offered to perform his part; that, as plaintiff never offered to perform, he cannot maintain this action, which must be based on the default of the defendant, and further that, time for performance being fixed not later than April 1, 1911, it was of the essence of the contract; and they

say that, delivery being at the option of plaintiff, he was bound to give notice; that plaintiff was bound to make his election by April 1, 1911, and to notify the defendant thereof by that date if he desired to turn the stock over to the defendant, and that plaintiff never made his election and never offered to turn over the stock to the defendant; and they say further that, if the contract be considered an option in favor of plaintiff, then it was never exercised. Authorities are cited to support these different propositions.

The law as thus claimed is not disputed by plaintiff if the contract is to be construed in accordance with defendant's contention. The plaintiff contends, however, that such is not a proper construction of the agreement, but that the contract created the relation between the parties of principal and agent as to the handling of the stock, and that the contract was not one by which plaintiff was to sell and defendant purchase from him two shares of stock; that it was a contract of agency, by which plaintiff held two shares of stock belonging to the defendant, coupled with an interest on account of the purchase price advanced by plaintiff for defendant. It is argued by appellant in support of his contention that the agreement was either an option on the part of the plaintiff to sell the stock to defendant, or a contract on the part of plaintiff to sell and on the part of defendant to buy the two shares of stock, and they say that defendant agreed to take the stock from plaintiff not later than April 1, 1911, and that this last clause means one of two things—that defendant was not bound to take the stock after April 1, 1911, or else that plaintiff could not insist that he (defendant) take the stock before April 1, 1911; and that, if the former be the construction adopted, then defendant is not liable because plaintiff did not make a tender of the stock, and if the latter construction be the one adopted, then plaintiff is not entitled to maintain the action, because he never made a tender of delivery of the stock to defendant. Defendant contends, also, that, if he was not compelled to take the stock before April 1, 1911,—in other

words, if defendant was given credit until April 1, 1911,—then plaintiff could only claim under such a construction that plaintiff had a reasonable time after April 1, 1911, to make a tender of delivery of the stock, and that, because there is no dispute in the evidence, what is a reasonable time becomes a question of law. On the other question, as to whether the contract should be construed as an option on the part of plaintiff to sell the stock to defendant not later than April 1, 1911, that plaintiff cannot maintain this suit because he did not exercise his option until after the time limited; and as to this matter, he says further that, if the contract was such as gave to plaintiff the right to sell the stock to defendant not later than April 1st, the date limited was of the essence, and plaintiff could not exercise his option after that date. The appellant says that he does not rely so much upon the question as to whether the contract is an option as that it was one of sale and purchase of the stock.

But we are inclined to think that defendant's contention is not sound, and that the proper construction of the contract is as claimed by plaintiff. As to whether it was a sale of stock or not, we may observe that, at the time the 2. SALES: transfer of title: purchase for another. contract was made, plaintiff owned no stock in the corporation and had none to sell, and he was in no manner interested in it. Defendant, who appeared to be interested in the sale of such stock, invited a conference with plaintiff on the subject, and he expressed a desire to acquire a couple of shares and asked plaintiff to assist him, saying that he had no money then, but that he would have money in the course of time, and if plaintiff would advance $200 for him he would repay it, with interest; and the letter before referred to was thereafter prepared. Plaintiff advanced the money and paid for the stock, as requested by defendant. The two shares of stock in controversy were held by plaintiff as the property of defendant, and plaintiff was ready at any time to transfer the certificate upon payment of the money advanced. The authorities seem to

hold that a contract by which one of the parties agrees to purchase goods for the other at a certain price, and the other agrees to receive them and pay the price on delivery, is a contract of agency for the purchase of goods, not a contract for the sale of the goods. I Clark and Skyles on Agency, Sec. 9; *Hatch v. McBrien*, 83 Mich. 159. And further that, where he party making the purchase is acting for the other and not for himself, the contract is one of agency. An agreement by which one of the parties thereto is to purchase land for another, although in his own name, and the other is to pay the purchase price, is a contract of agency. 1 Clark and Skyles on Agency, Sec. 10; *Baker v. Wainwright*, 36 Md. 336.

In the letter before set out, defendant promised to take the stock off plaintiff's hands not later than April 1, 1911, and then pay the purchase money, with interest, and plaintiff was to handle this stock for him until he could take it. We think it quite clear from the evidence that the stock was to be treated and considered as the property of defendant, although taken and held in the name of plaintiff. The letter also provides:

"You have agreed to handle this additional amount for me until I can take the same."

If plaintiff was the owner of the stock, there was no necessity for defendant's giving him any directions as to handling it. Under the letter, plaintiff was given authority under the contract to handle the stock in any way he should see fit, not for himself, but for the defendant.

It should have been stated, perhaps, that, on the several occasions when plaintiff or his attorney endeavored to obtain the fulfillment of the contract, defendant made no claim of failure of plaintiff to perform the contract on his part. It may be that defendant's action and conduct and requests for more time should be considered as admissions of liability.

Appellee further contends that, even if it should be held that the contract was not one of agency, then the transaction should be considered as creating the relation of debtor and

creditor, and that the stock was held by the creditor as security for the payment of the debt. Of course, as between the parties, it is immaterial that the certificate was issued by the corporation in the name of plaintiff. If it was their agreement and understanding that the stock should be purchased for the defendant and handled for him by the plaintiff, then it was, in fact, the property of defendant. We think the error into which defendant has fallen is in the assumption that plaintiff was the owner of this stock, and that the agreement was one providing for a sale by him to defendant. The cases cited by appellant are, as before stated, not in point, because the evidence and a proper construction of the contract and letter do not bear out his contention.

2. As to the item of $57.50, the liability incurred as stockholder, the settlement for this item was made after plaintiff and his attorney had failed in their efforts to obtain a performance of the contract on defendant's part. Plaintiff was, it is true, the nominal owner of the stock. As between him and the creditors of the corporation, there was no question as to his liability, and this liability was incurred by reason of handling the stock for defendant. The letter authorized plaintiff to handle the stock in any way he saw fit until such time as defendant could take it off plaintiff's hands. Under this contract, it seems to us that defendant should pay the stock liability, as well as the purchase price. If the enterprise had been successful and there had been dividends, they would have gone to the defendant. Taking the entire record together, we think the purpose which the parties had in view when the contract was made was to accommodate the defendant and secure the plaintiff against loss. The stock liability which plaintiff was obliged to settle was, in fact, the defendant's obligation. We have already indicated that the relation was that of principal and agent. A principal is under obligation to reimburse his agent for all advancements and disbursements made by him in good faith for the benefit of the

3. PRINCIPAL AND AGENT: rights of agent: reimbursement for losses, etc.

principal and in the proper execution of the agency, whether there is an express promise by the principal to this effect or not. 1 Clark & Skyles on Agency, Sec. 370.

A principal is also under obligation to indemnify his agent against his losses or damages suffered by reason of any act performed by him in the due execution of the agency; for an agent has a right to assume, in the absence of notice to the contrary, that his principal will not require him to do acts which will render him liable to third persons, and, if the principal does require him to perform such acts, the principal, and not the innocent agent, should suffer the consequences; and in such cases, if there is not an express promise to indemnify it will usually be implied. . 1 Clark and Skyles on Agency, Sec. 371.

But, aside from the doctrine of agency, we think defendant should pay this stock liability upon the ground that it was a damage imposed upon plaintiff by reason of this breach of contract. Defendant induced plaintiff to take 4. DAMAGES: measure of damages: breach of contract: proximate results. and hold the two shares of stock for him upon his promise to take the same off plaintiff's hands not later than April 1, 1911. He breached his contract in this respect and left the stock on plaintiff's hands, with the result of an expense of $57.50. If he had performed his agreement, the two shares would have been transferred to him, and plaintiff would not have been the nominal holder thereof when the corporation failed, and, therefore, would not have suffered the damage arising from a stockholder's liability.

It is our conclusion, therefore, that the trial court rightly decided the matter, and the judgment is, therefore—*Affirmed.*

EVANS, C. J., DEEMER and WEAVER, JJ., concur.