WARD COMMISSION COMPANY, Appellant, v. SIOUX FALLS NATIONAL BANK, Appellee.

**FACTORS: Duty as to Proceeds—Nontrust Relation.** A merchant who
1  sells property on commission holds the proceeds of the sale in a trust capacity, and the nature of the proceeds is not changed by a deposit in the name of the merchant. Record held wholly insufficient to apply the principle.

**BANKS AND BANKING: Deposits—Application to Matured Obliga-**
2  **tions.** Principle reaffirmed that a bank may validly charge a depositor's general account with the matured obligations of the depositor.

Headnote 1: 25 C. J. p. 416; 35 Cyc. p. 27. Headnote 2: 7 C. J. p. 661.

*Appeal from Woodbury District Court.*—A. O. WAKEFIELD, Judge.

MARCH 17, 1925.

ACTION to recover amount of the proceeds of sale of seven carloads of hogs sold by plaintiff to the Hopkins-Harrington Company, which proceeds were deposited in defendant bank.

Case was tried to the court without a jury. At the close of plaintiff's evidence, on motion of defendant, the petition was dismissed by the court on its merits. Facts appear in the opinion. Plaintiff appeals.—*Affirmed.*

*Shull, Stilwill, Shull & Wadden,* for appellant.

*Danforth & Barron* and *C. R. Jones,* for appellee.

ARTHUR, J.—I.   There was no issue of fact presented to the trial court for determination, as the only evidence was produced by plaintiff, appellant here.   Questions of law only were involved, and only questions of law are involved on this appeal.

Appellant was a corporation engaged in the live-stock business at Sioux City, Iowa, and maintained a branch office at the stockyards at Sioux Falls, South Dakota.   This branch office was in charge of a salesman, a yard man, and a bookkeeper.   The Hopkins-Harrington Company was a corporation engaged in business at Sioux Falls.   Its business was buying and selling hogs and cattle.   It did not deal as a commission merchant.   It did not receive commissions in its dealings.   Its business ·was what is called in the record, ''order buying.''   Its method of doing business was that it received orders from packing houses to furnish a certain number of hogs, about a specified weight, and at an approximate price.   Upon receipt of such an order, the company would make purchases direct from owners of hogs, to fill such orders.   Its method in such transactions was to have the hogs so purchased marketed as sold to one Harmison.   The hogs were watered and fed, and then weighed from Harmison to the packing house whose order was being filled.   Orders came and were filled from different packing houses.   Those involved in this case were from Armour & Company.   The profits of Hopkins-Harrington Company came from the gain in weight of the hogs by feed and water while the hogs were in its possession at Sioux Falls, before consigning them to Armour & Company.

The company did its banking with appellee bank, located at Sioux Falls.   In its account with said bank, the company deposited funds derived from the sale of hogs and cattle, and money borrowed to carry on its business; and from that account

1. FACTORS: duty as to proceeds: nontrust relation.

it paid for hogs and cattle purchased, and the expenses of running its business. It was a general deposit and disbursement account, kept for the transaction of its business. The transactions on which plaintiff's case is predicated were:

On May 17, 1920, Hopkins-Harrington Company purchased from appellant three carloads of hogs at the agreed price of $6,903.75, and in payment therefor delivered to appellant its check for that amount, drawn on appellee bank; and on May 18th, the company bought four carloads of hogs from appellant at the agreed price of $8,111.21, and gave its check in payment for said hogs in that amount, drawn on appellee bank. Most of the hogs in these two purchases were included in shipments made by Hopkins-Harrington Company to Armour & Company, but some of them were not. Of these purchases, some 32 hogs were not shipped to Armour & Company.

The evidence discloses the manner of doing business to be that Hopkins-Harrington Company would load and consign cars of hogs to Armour & Company, procure a bill of lading from the railway company, make out an invoice showing the amount of the shipment, the price paid, and the party from whom purchased, and make out a sight draft on Armour & Company for the amount of said shipment; and the draft, with the invoice and bill of lading attached, would be deposited in appellee bank in the general account of Hopkins-Harrington Company. In the record appears the ledger account of Hopkins-Harrington Company with appellee bank, showing balance to begin on May 17th, and credits and debits on and after that date until the account was finally closed, on May 20th. This account consists of many items. It is only necessary to notice items involved in this case.

On May 17th, Hopkins-Harrington Company made a deposit in its general account, of $20,419.59. This deposit was a draft drawn by Hopkins-Harrington Company against Armour & Company. The draft was for hogs shipped to Armour & Company on that day. Attached to the draft was an invoice of the shipment and the shipping contract with the railroad company. On May 18th, the company deposited a draft for $28,547.79, drawn on Armour & Company for hogs shipped, in the same manner. Included in said shipments on which said

drafts so deposited were drawn, were hogs sold by appellant to Hopkins-Harrington Company. Also, on May 17th, the company made another general deposit of $2,900, and on May 19th it deposited $6,179.77. What these deposits consisted of, the record does not disclose. Many checks were drawn against the account and paid. Appellee bank owned and held matured notes of the Hopkins-Harrington Company, upon which there was due, on May 17th, $15,333.34; and on that day the bank paid these notes out of the account, by charging the account on that date with the amount due on said notes and canceling the indebtedness, and returned the notes to Hopkins-Harrington Company. On May 19th, the company closed its account with appellee bank, and received a cashier's check for the balance in its account, of $5,413.42, and opened an account in another bank, the Minnehaha National Bank of Sioux Falls. Appellant kept its account with the Minnehaha National Bank. The checks received by appellant from Hopkins-Harrington Company for $6,903.75 and $8,111.21 were deposited in the Minnehaha National Bank, and were, on May 19th, presented, in the regular course of business, to appellee bank for payment; and payment was refused, because the Hopkins-Harrington account in appellee bank had been closed and its balance withdrawn. Thereupon this suit was instituted. It may be added that the suit was aided by attachment, jurisdiction being thus acquired.

II. Appellant claims that the credit out of which appellee offset its note was made up wholly from the Armour & Company sight drafts which were deposited; and that, if appellee bank had not appropriated this money to pay its own notes, there would have been sufficient funds in the bank, from the proceeds of sales to Armour & Company, to have paid appellant's checks in full. It is the contention of appellant that the proceeds of the sight drafts so deposited, with the invoices and bills of lading attached, became trust funds for the payment of all live stock so sold to Armour & Company; that the funds came into the bank, bearing, as counsel for appellant states it, "the earmarks" of the trust so imposed; and that appellant is entitled to have judgment against appellee bank for the purchase price of the seven carloads of hogs bought from appellant and shipped

and consigned to Armour & Company, the proceeds of which were deposited in appellee bank.

It is the contention of appellee that the evidence conclusively establishes that there was no fiduciary relationship existing between the Hopkins-Harrington Company and the Ward Commission Company, appellant; that the transactions between the Hopkins-Harrington Company and the Ward Commission Company were simply direct sales; that there was nothing in the transactions that would charge appellee bank with any knowledge of any trust or fiduciary relationship; that the funds deposited with appellee bank were not in any sense trust funds; that the account of the Hopkins-Harrington Company with the bank was closed in the regular course of business; that the bank had a right to exercise its right of offset, which it did; and that said act was ratified and approved by the Hopkins-Harrington Company's accepting the surrender of its notes and closing its account before appellant's checks were presented for payment.

As before adverted to, there is no dispute as to the facts, appellee having offered no evidence; and the question presented on this appeal is one of law, as to whether the trial court was right or was in error in denying recognition of the fund on deposit in appellee bank as a trust fund, for the payment of the checks issued to appellant. The concrete question presented is whether or not appellant is entitled to recover the amount of the two checks given in payment for hogs which were included in shipments to Armour & Company, on which said shipments drafts were drawn and deposited in appellee bank in the account of Hopkins-Harrington Company. Counsel for appellant in support of their position cite *Cable v. Iowa State Sav. Bank,* 197 Iowa 393, *Union Stock Yards Nat. Bank v. Gillespie,* 137 U. S. 411 (34 L. Ed. 724), and other cases of like character, wherein it is held, in effect, as we said in the *Cable* case, at page 396:

"The law is well settled that the title to property consigned to a factor or commission merchant for sale remains in the consignor, and that such factor or commission merchant holds the proceeds derived from the sale of such property in a fiduciary

or trust capacity, and that its character is not changed by being placed to his credit in the bank.''

The cases are not in point. The facts before us do not make out a case for application of the doctrine announced in said cases, which may be called ''commission merchant cases.'' The trust fund doctrine in the commission merchant cases is predicated upon the trust relationship existing by virtue of the stock's being delivered to a commission merchant for sale only, where the title to the stock does not pass to the commission merchant, but remains in the party who delivers the stock to the commission merchant, to make sale for him. In the instant case, the Hopkins-Harrington Company was not selling the hogs for the Ward Commission Company on commission, or in any manner; nor was it buying hogs on commission for Armour & Company.

2. BANKS AND BANKING: deposits: application to matured obligations.

It bought the hogs from the Ward Commission Company outright; and, on delivery to it by the Ward Commission Company, the title to the hogs passed at once to it. No relationship of trust or agency arose between the parties. The relationship between the Ward Commission Company and the Hopkins-Harrington Company was simply that of seller and buyer; and when the checks were issued for the purchase of the hogs, and not paid, there existed simply the relation of creditor and debtor. Appellee bank had the right of offset,—that is, to pay from the account of the Hopkins-Harrington Company the matured notes of the said company held by it,—under the situation disclosed by the evidence. *Smith v. Des Moines Nat. Bank,* 107 Iowa 620; *Porter Auto Co. v. First Nat. Bank,* 185 Iowa 844.

The judgment of the trial court is affirmed.—*Affirmed.*

FAVILLE, C. J., and EVANS and ALBERT, JJ., concur.