FLORENCE ROGIERS *vs.* GILCHRIST COMPANY.

Suffolk. November 2, 1942. — December 28, 1942.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Sale,* Warranty. *Notice.*

Evidence of the circumstances of the sale of a dress which, when worn by the purchaser, caused toxic dermatitis wherever it came in contact with her skin, warranted a finding of breach of an implied warranty under G. L. (Ter. Ed.) c. 106, § 17 (1), of the fitness of the dress for the purpose of being worn.

Due notice under § 38 of G. L. (Ter. Ed.) c. 106 of a breach of an implied warranty under § 17 (1) in the sale on May 26 of a dress which when worn caused toxic dermatitis properly might be found on evidence that on September 5 the purchaser first was informed by her physician that the dress was the cause of the dermatitis, and that four or five days later she interviewed an agent of the seller, stating the facts and that she "would have to sue" as she "couldn't afford to pay doctors."

CONTRACT OR TORT. Writ in the Superior Court dated January 24, 1940.

The case went to trial on a count for breach of warranty. The trial was before *O'Connell,* J., who ordered a verdict for the defendant. The plaintiff alleged exceptions. The parties stipulated that, if the judge was in error in ordering a verdict, judgment for the plaintiff in the sum of $500 should be entered; otherwise judgment should be entered for the defendant.

*H. S. Roit,* for the plaintiff.

*S. H. Rogers,* for the defendant.

QUA, J. "Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies upon the seller's skill and judgment, . . . there is an implied warranty that the goods shall be reasonably fit for such purpose." G. L. (Ter. Ed.) c. 106, § 17 (1). (Sales Act, § 15.)

In this action for breach of an implied warranty of fitness in the sale of a dress by the defendant to the plaintiff at the defendant's store on May 26, 1939, there was evidence tending to show the following: The salesgirl at the store "offered to help" the plaintiff and "selected the dress." When the plaintiff wore the dress her skin "broke out in a rash" under her armpits. She had never before had any skin trouble. On May 31 she saw her physician. She continued to wear the dress from time to time and occasionally visited the physician until on September 5 he told her not to wear the dress. Before that she had no suspicion that the dress caused her injury. The physician testified that the plaintiff's condition was "a chemical dermatitis," and that in his opinion the dress caused it. A biological chemist called by the plaintiff testified that upon testing the dress he found that it had been improperly dyed in that the "dye intermediate," a toxic substance, had not been completely oxidized, and that such a dress would cause a toxic dermatitis wherever it came in contact with the skin. No further statement of the evidence is required to demonstrate that a jury could have found the existence and the breach of an implied warranty of the fitness of the dress for the purpose of being worn. *Flynn* v. *Bedell Co. of Massachusetts*, 242 Mass. 450. *Idzykowski* v. *Jordan Marsh Co.* 279 Mass. 163, 166, 167.

The defendant's argument before us has been chiefly directed to the point that there was no sufficient evidence that the buyer gave "notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer . . . [knew], or ought to . . . [have known] of such breach." G. L. (Ter. Ed.) c. 106, § 38. (Sales Act, § 49.) On this point there was evidence tending to show the following: Four or five days after September 5, 1939, the day when the physician first informed her that the dress was the cause of her trouble, the plaintiff went "to the Gilchrist Company" and talked with a Miss Brown, the assistant manager of the "ready-to-wear department," whose duty it was "to accept complaints." The plaintiff told Miss Brown that the plaintiff had bought the dress

there, showed Miss Brown the dress and the "sales slip," told her that the plaintiff had broken out with a rash and that she and her doctor "had definitely decided it was the dress that had caused it." She asked Miss Brown whether she had ever heard of anything like that before and told her that the plaintiff "would have to sue," as she "couldn't afford to pay doctors" or "have the woman staying" with her. Miss Brown suggested putting a lining in the dress, and the plaintiff said she would try it when she got home, and did in fact put a lining in the dress and wore it once after that.

From this evidence it could have been found that the attention of an authorized agent of the seller was called to the particular sale, and that she was fairly advised of the general nature of the defect in the dress and that the buyer intended to assert her legal rights, all within a reasonable time after the buyer knew or ought to have known of the defect. Every element of a valid notice could have been found. *Nashua River Paper Co.* v. *Lindsay,* 249 Mass. 365, 370. No greater particularity was required as to what chemical substance in the dress caused the rash. *Guthrie* v. *J. J. Newberry Co.* 297 Mass. 245, 248. Nothing in the evidence required a finding of a waiver on the plaintiff's part. The case is to be classed with such cases as *Jamrog* v. *H. L. Handy Co.* 284 Mass. 195, 198, 199; *Smith* v. *Denholm & McKay Co.* 288 Mass. 234, 241; *Johnson* v. *Kanavos,* 296 Mass. 373, 376, 377; *Bruns* v. *Jordan Marsh Co.* 305 Mass. 437, 444, 445; and *Morin* v. *Stromberg,* 309 Mass. 146, 148, 149. See *Bianchi* v. *Denholm & McKay Co.* 302 Mass. 469. Compare *Murphy* v. *Gilchrist Co.* 310 Mass. 635.

Since the case should have been submitted to the jury, the exceptions are sustained, and in accordance with a stipulation of the parties, judgment is to be entered for the plaintiff in the sum of $500.

*So ordered.*