WALTER O. REED, appellee, v. OLIVER H. BUNGER, appellant.

No. 50952.

(Reported in 122 N.W.2d 290)

June 11, 1963.

Kennedy, Kepford, Kelsen & White, of Waterloo, for appellant.

Pike, Hoxie, Butler & Teske, of Waterloo, and Tony Jack Lyons, of Pryor, Oklahoma, for appellee.

GARFIELD, C. J.—This is a law action in three counts by plaintiff Walter O. Reed against defendant Oliver H. Bunger for damages for breach of express oral and implied warranties and fraud in the alleged sale by defendant to plaintiff of 20 heifers. Trial was to the court without a jury. The court found a breach of both express and implied warranties but that fraud was not proven. From judgment for $2422.38 against him defendant appeals. The principal errors assigned challenge the sufficiency of the evidence, in at least three respects, to support the judgment.

These propositions are deemed so well established that authorities need not be cited to support them: The trial court's findings of fact are binding upon us if supported by substantial evidence. In considering defendant's claim he was entitled to a so-called directed verdict we give plaintiff's evidence the most favorable construction it will reasonably bear. Even when the facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them, a jury question is engendered. Rule 344(f) 1, 2 and 17, Rules of Civil Procedure.

I. Defendant's first assigned error is that there was no sale of 15 of the 20 heifers on which to base a claim of warranty but the relationship between plaintiff and defendant was that of principal and agent rather than buyer and seller. We hold there is substantial evidence to support the court's finding there was an oral contract for the sale and purchase of the 20 heifers. Defendant admits there was a sale of five of the 20. We may as well summarize the evidence now.

Plaintiff is a farmer and dairyman living near Locust Grove, Mayes County, Oklahoma. In 1959 defendant was a

dealer in "choice dairy cows" at Cedar Falls, Iowa. Plaintiff wanted to buy 20 second-calf heifers, which would each produce at least 40 pounds of milk per day, to add to his herd. Sheriff L. L. Weaver of Mayes County had been a dairyman and cattle trader, knew defendant and had bought cattle from him. He referred plaintiff to defendant. October 12, 1959, plaintiff telephoned defendant from Oklahoma and the oral agreement between them was then made.

Plaintiff testifies he told defendant he wanted to buy 20 good, clean second-calf heifers which would each produce 40 pounds of milk a day; defendant said he had five first-calf heifers with good milk production; plaintiff said he would accept the five if they were good, clean first-calf heifers; after further conversation plaintiff asked defendant, " 'Would you put the 20 head down here for $6000?' "; defendant replied, " 'I will do her' "; defendant asked plaintiff how he would finance these cows; plaintiff replied, " 'I will pay for them when they get here' "; it was agreed defendant was to have until November 1 to make delivery. (We use "heifers" and "cows" here interchangeably as some of the witnesses do.)

Defendant testifies plaintiff instructed him to buy 15 cows to go with the five first-calf heifers and ship them to plaintiff in Oklahoma during October; defendant told plaintiff they would cost what the former paid for them, plus veterinarian's fees, trucking cost and $10 "a cheek" commission. Defendant admits plaintiff asked him, "Do you think they could be brought here for $300 apiece?"; defendant says he replied he did not think they will cost that much. Defendant also admits he represented to plaintiff the 20 cattle, under proper feeding and handling, would each be capable of producing 40 pounds of milk per day. Plaintiff insists there was no talk of paying defendant a commission or of his going out and buying these cows.

Defendant further testifies he found one of his five first-calf heifers was not suitable for plaintiff's needs, he purchased 16 cows in Minnesota and Wisconsin and they were loaded in a truck October 18 together with his four remaining first-calf heifers for delivery to plaintiff. They arrived and were unloaded about daybreak next morning. Plaintiff testifies he was not then

present but observed the cows about eight o'clock that morning, saw they were not what he ordered and informed the trucker to so advise defendant. (Defendant made arrangements for the trucking.) Plaintiff went to the FHA office in Pryor where he had arranged for a loan to pay for the cattle. He says the FHA supervisor advised him to pay for them because they were warranted and the Oklahoma quarantine law prohibited returning them to Iowa for 45 days. About noon on October 19 plaintiff gave the trucker a check, signed by plaintiff and the loan supervisor, payable to defendant for $6055.

The trucker delivered to plaintiff an invoice of the cattle written by defendant, dated October 18, the total of which was $6055. Opposite this total was written, "Thanks. Oliver." At the bottom of the exhibit this was written, "These cows come a little higher than I said over the phone but are some larger * * *." Defendant received and cashed the check.

The first of the 20 cows plaintiff milked gave bloody milk, the milk of four others contained chunks and clots which stopped up the strainer, one other did not have a normal bag. Only seven of the 20 were fresh—capable of giving milk. There is much evidence all but five of the cattle were older than represented or infected with mastitis, a disease which renders the milk unfit for consumption.

Plaintiff says he wrote defendant October 27 the cows were not what he ordered and he wanted defendant to get them. He received no reply. After three unsuccessful efforts to get defendant by phone plaintiff succeeded on November 9, told him he was going to return the cows (except the five satisfactory ones) or he could get them, that "they were with mastitis and old age" and threatened suit if defendant would not accept the 15. Plaintiff testifies defendant asked that Sheriff Weaver "mouth the cows and if they are like what you said I will make it right." Plaintiff was unable to get the sheriff to examine the cows until December 9. Two veterinarians and the sheriff (all three testify for plaintiff) then examined the 15 cows and found them old and the majority infected with mastitis. The day after the cattle were delivered another veterinarian looked at them and prescribed medicine for those with mastitis. Plaintiff administered the medicine for two months without success.

Defendant testifies the reason he gave plaintiff for refusing to accept return of the cattle is that they had been away from defendant's place too long. So far as appears, the contention defendant acted as plaintiff's agent in purchasing 15 (or 16) cows was not asserted until the evidence was about closed. It was then stated in an amendment to answer and a motion "for directed verdict."

Defendant's argument the parties were principal and agent, not buyer and seller, seems to be largely based on testimony that defendant did not have on hand on October 12 the 20 heifers plaintiff wanted to buy and it was necessary for defendant to acquire 15 before he could perform his contract. We think defendant claims too much for this testimony, most of which plaintiff denies. If defendant agreed to sell plaintiff the 20 cattle for $6000 the mere fact he did not then have all of them, although he had some, would not make him plaintiff's agent for their purchase.

Agency is a fiduciary relation which results from the manifestation of consent by one person, the principal, that another, the agent, shall act on the former's behalf and subject to his control, and consent by the other so to act. Brown v. Schmitz, 237 Iowa 418, 424, 22 N.W.2d 340, 343, and citations; Restatement Agency, 2d Ed., section 1; 3 Am. Jur.2d, Agency, section 1.

There is little if any evidence of such relation—that plaintiff consented to defendant's acting in the former's behalf and subject to his control or that defendant consented to, or did in fact, so act. We find no substantial evidence, direct or circumstantial, plaintiff exercised any control over defendant in buying the 16 cattle or reserved the right so to do. Defendant purchased the cattle where and from whom he pleased, presumably paid for them, he was the buyer, he took title in his own name and they were consigned to him at Cedar Falls, Iowa. They were not plaintiff's cattle before delivery to him. There is no evidence defendant purported to act as plaintiff's agent in buying them. Brown v. Schmitz, supra; Ward Commission Co. v. Sioux Falls Natl. Bk., 199 Iowa 829, 834, 202 N.W. 829, support our conclusion.

■ ■ The burden to prove the affirmative defense there was a principal-agent relation was upon defendant. The question, as ordinarily, was essentially one of fact for the trial court in the absence of a jury. Grismore v. Consolidated Products Co., 232 Iowa 328, 334, 335, 5 N.W.2d 646, 651, and citations; Fowler v. Berry Seed Co., 248 Iowa 1158, 1165, 84 N.W.2d 412, 416; 3 Am. Jur.2d, Agency, sections 348, 359; 3 C. J. S., Agency, section 330b(1), pages 323, 324.

The main precedent defendant cites for his first assigned error is Foley v. Nimocks, 175 Iowa 464, 157 N.W. 178. We do not regard it as in point or in conflict with our conclusion. Defendant there persuaded plaintiff, a minister, to purchase and hold for the former two shares of stock in a certain corporation at a fixed price which defendant would pay plaintiff within a specified time. Plaintiff then owned none of the stock, had none to sell, was of course not a dealer in stocks and held the two shares as defendant's property. In a law action to recover from defendant the price of the stock there was a judgment for plaintiff, which we affirmed, on the ground he acted as defendant's agent and the agreement (evidenced by a writing) was not for sale of the stock by plaintiff to defendant. Incidentally the decision antedates passage in Iowa of the Uniform Sales Act, chapter 554, Codes, 1958, 1962.

■ II. The trial court concluded the contract was to be performed in Oklahoma and title to the cattle passed when delivered and plaintiff paid the purchase price there. Defendant argues the contract was an Iowa contract, fully performed here when the cattle were loaded on the truck and the case is therefore governed by Iowa law. We need spend no time on whether the case is governed by Iowa or Oklahoma law. The trial court concluded that in the absence of pleading and proof of Oklahoma law it is presumed to be the same as Iowa's (the forum) and therefore our law governs the case. This accords with our decisions in In re Estate of Drumheller, 252 Iowa 1378, 1385, 110 N.W.2d 833, 836, 87 A. L. R.2d 1233, and citations; Acme Feeds Incorporated v. Berg, 231 Iowa 1271, 1275, 4 N.W.2d 430, 432. The obvious answer to defendant's argument Iowa law governs the case is that the trial court so held.

III. Defendant contends plaintiff failed to prove his damages properly. Next to the assigned error considered in Division I hereof this seems to be the contention most relied on. The main argument here is that plaintiff should have shown the difference between the value of the cattle, either as a herd or individually, at Cedar Falls, Iowa, and the value they would have had there if they had been as warranted. Plaintiff showed the difference in such values in Mayes County, Oklahoma, at the time the cattle were delivered there. The trial court held this was proper and we agree.

Our Sales Law (section 554.70) provides:

"6. The measure of damages for breach of warranty is the loss directly and naturally resulting in the ordinary course of events, from the breach of warranty.

"7. In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty."

The rule set out in subsection 7, supra, is recognized in Drager v. Carlson Hybrid Corn Co., Inc., 244 Iowa 78, 86, 56 N.W.2d 18, 23, and is stated in somewhat more general terms in Kelly v. Emary, 242 Iowa 683, 690, 45 N.W.2d 866, 871.

Section 554.71 states in pertinent part: "Nothing in this chapter shall affect the right of the buyer * * * to recover * * * special damages in any case where by law * * * special damages may be recoverable, * * *."

Both values referred to in section 554.70(7) supra—"as is" and as warranted—are to be estimated as of the time and place of delivery. 46 Am. Jur., Sales, section 738, pages 863, 864; 77 C. J. S., Sales, section 375, page 1320. This is consistent with rule 5 of section 554.20 of the rules for ascertaining the intention of the parties as to the time at which the property in ascertained goods is to pass to the buyer: "If the contract to sell requires the seller to deliver the goods to the buyer, * * * the property does not pass until the goods have been delivered to the buyer * * *." This rule was applied in Rudy-Patrick Seed Co. v. Roseman, 234 Iowa 597, 603, 13 N.W.2d 347, 350.

If there is substantial evidence defendant agreed to deliver the cattle to plaintiff's farm, the trial court correctly ruled values of the cattle should be estimated as of the time and place of such delivery. Defendant's brief admits this. It says, "If appellant were required to deliver these cattle to appellee's farm in Oklahoma, values for the purpose of this suit would be determined in Oklahoma." Defendant also admits, referring to evidence of the conversation between the parties on October 12, "As to whether such conversation, which appellant denied, constitutes an agreement of the claimed seller to deliver to Oklahoma is perhaps the fact question for the trial court to decide."

We have no doubt there is substantial evidence defendant agreed to deliver the cattle to plaintiff's farm. As before indicated, defendant admits plaintiff asked him on October 12 if he would "put the 20 head down here" for $300 each or a total of $6000. Defendant says he answered he did not think it would take that much. Plaintiff insists defendant replied, " 'I will do her.' " The litigants are the only witnesses to the conversation. Evidently the court believed plaintiff. Of course he had a right to do so. Even under defendant's version of his reply it might be held he agreed, at least impliedly, to deliver the cattle to Oklahoma.

■ Since plaintiff owned these (and other) cattle he was qualified to testify to their value. Slabaugh v. Eldon Miller, Inc., 244 Iowa 29, 36, 55 N.W.2d 528, 532, and citation; 20 Am. Jur., Evidence, sections 894, 896; 32 C. J. S., Evidence, section 545e(3), pages 315–318. He testifies fully to the values of the cattle, individually and collectively. He says if each animal had been as warranted its value would have been $302.75. This is one twentieth of the price plaintiff paid for the 20 head. It may fairly be inferred from this that $302.75 was the value he ascribes to each of the five animals he admits complied with the warranty. Plaintiff also testifies the value of each of the other 15 cows on October 19, in the condition it was in, was the net price he was able to sell it for. There is no testimony to the contrary. The trial court was justified in accepting it in arriving at the amount of the judgment.

■ We may observe that the price for which personal prop-

erty sells at a bona fide sale is competent evidence of its value. Conditioned Air Corp. v. Rock Island Motor Transit Co., 253 Iowa 961, 966, 114 N.W.2d 304, 308, and citations. See also Drager v. Carlson Hybrid Corn Co., Inc., supra, 244 Iowa 78, 87, 56 N.W.2d 18, 24, and citations. It is not suggested plaintiff did not act in good faith in the matter or effect the best sale he could of the 15 animals. Of course it was to his advantage to do so. Conditioned Air Corp. case, supra.

In addition to the difference in values shown as above, the judgment includes $100 as special damages claimed for the cost of a veterinarian's services and medicines in treating the animals infected with mastitis. These costs "ran about $113." It was conceded the charges were reasonable. We do not understand defendant objects to this item if plaintiff is entitled to recover the larger one. Its allowance was proper. Code sections 554.70(6), 554.71, both supra.; Jaeger v. Hackert, 241 Iowa 379, 390, 41 N.W.2d 42, 49, and citations; Doden v. Housh, 251 Iowa 1271, 1277, 1278, 105 N.W.2d 78, 82.

IV. It is argued the evidence establishes there was no express warranty and there can be no implied warranty of soundness where the unsoundness is hidden, unknown to the seller and difficult to discover. And, it is said, such is the situation here.

The trial court found an express oral warranty the 20 cattle would be good, clean Holstein heifers, five to be first-calf heifers and the rest second-calf heifers. Also that plaintiff made known to defendant the particular purpose for which the cows were required, relied on defendant's skill and judgment in selecting the ones to be shipped and there was therefore an implied warranty the cows would be reasonably fit for such purpose. Further, that as to all the cows except the five which complied with the warranty there were breaches of warranty, some implied, some express, and some both implied and express.

We must disagree with the argument there is no evidence of express warranty—or breach thereof. It is unnecessary to set out the definition of express warranty in Code section 554.13, part of the Uniform Sales Law. Certainly a seller's promise to sell "good, clean, second-calf heifers" may amount to

such a warranty, not, as defendant suggests, a mere statement of the seller's opinion. There is substantial evidence the 15 cows did not answer to this warranty.

With reference to implied warranty, section 554.16(1) (6) provides:

"1. Where the buyer * * * makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, * * * there is an implied warranty that the goods shall be reasonably fit for such purpose."

"6. An express warranty or condition does not negative a warranty or condition implied under this chapter unless inconsistent therewith."

 "Goods" is broad enough to include cattle. Section 554.77; Ver Steegh v. Flaugh, 251 Iowa 1011, 1023, 103 N.W.2d 718, 725, 726; Doden v. Housh, supra, 251 Iowa 1271, 1274, 105 N.W.2d 78, 79, 80. It is not contended the claimed express warranty is inconsistent with the implied warranty alleged in a separate count.

 We have said the question whether there is a breach of warranty, express or implied, is largely one of fact. Farmers State Bank v. Cook, 251 Iowa 942, 946, 103 N.W.2d 704, 706, and citations.

It must be admitted we held prior to the adoption of our Sales Act there was no implied warranty of soundness in the sale of animals where unsoundness is hidden, unknown to the seller and difficult to discover. Rhynas v. Keck, 179 Iowa 422, 425, 161 N.W. 486. (See, however, Redhead Bros. v. Wyoming Cattle Investment Co., 126 Iowa 410, 418, 102 N.W. 144, 146.) The Rhynas decision is one of the older ones, not governed by our Sales Act, which applies the rule of caveat emptor. The present case is governed by the Uniform Act which conflicts with the cited precedent.

 Appellants in Ver Steegh v. Flaugh, supra, 251 Iowa 1011, 1025, 103 N.W.2d 718, 727, and Doden v. Housh, supra, 251 Iowa 1271, 1274, 105 N.W.2d 78, 80, strongly relied on Rhynas v. Keck. Without mentioning it by name we there

pointed out the older decisions on caveat emptor are not now applicable. The Ver Steegh and Doden opinions make it clear there may now be an implied warranty of reasonable fitness of an animal notwithstanding the seller's lack of knowledge it does not comply with the warranty and the difficulty of discovering this fact. Good faith and lack of the seller's negligence are no defense. In view of our Sales Act we cannot recognize Rhynas v. Keck, supra, as a binding precedent.

Other Iowa decisions have recognized the tendency to narrow application of the rule of caveat emptor and extend the doctrine of implied warranty in sales of personalty. Drager v. Carlson Hybrid Corn Co., Inc., supra, 244 Iowa 78, 84, 85, 56 N.W.2d 18, 22; Farmers State Bank v. Cook, supra, 251 Iowa 942, 947, 103 N.W.2d 704, 707.

V. Defendant assigns error in the admission in evidence, notwithstanding his objection of not the best evidence, of a mimeographed copy of regulations purportedly issued by the Oklahoma Board of Agriculture which seem to have required that the cattle in question be held under quarantine at least 45 days after arrival in the state. At the end of the exhibit is a statement, signed by a man as state veterinarian, that it is an accurate copy of regulations pertaining to importation of animals into the state. An Oklahoma veterinarian identified the signature.

There are at least two answers to this claim of error. Ruling on defendant's objection was reserved, apparently with defendant's consent. No request or demand for a ruling was made. The objection is therefore deemed waived. Error does not appear. Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 721, 107 N.W.2d 85, 93, 94, and citations; Iowa Development Co. v. Iowa State Highway Commission, 252 Iowa 978, 984, 108 N.W.2d 487, 491.

Ruling was reserved on an unusual number of objections to evidence. We suggest, to the extent it was done here, this was of doubtful wisdom.

The second answer to this assigned error is that quite a little other evidence was received without objection to the effect a state regulation prevented removal of the cattle from

the state for 45 days after their arrival. Consideration of the exhibit referred to, if there was such, was therefore without substantial prejudice to defendant. Ver Steegh v. Flaugh, supra, 251 Iowa 1011, 1020, 103 N.W.2d 718, 723, 724, and citations.

VI. Defendant's final contention is that plaintiff accepted the cattle after inspection and with knowledge of the claimed defects and by so doing waived his claim for breach of warranty and is estopped from asserting it.

A sufficient answer to this is found in Code section 554.70: "Remedies for breach of warranty. 1. Where there is a breach of warranty by the seller, the buyer may, at his election: * * * b. Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty."

Section 554.50 also finds application. It provides: "In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach the seller shall not be liable therefor."

The trial court found plaintiff gave defendant notice of the claimed breach of warranty within a reasonable time after he knew of it. Substantial evidence supports the finding. Defendant does not argue to the contrary.

It is important that section 554.70(3) provides, "Where the goods have been delivered to the buyer, he cannot *rescind the sale* if he knew of the breach of warranty when he accepted the goods, * * *." (Emphasis added.) We find no similar provision in the Sales Act that prevents the buyer's action for damages for breach of warranty after acceptance of the goods with knowledge of the breach.

Roland v. Markman, 207 Iowa 1322, 1325, 1326, 224 N.W. 826, rejects such a contention as defendant's final one. After quoting what are now sections 554.50 and 554.70 (1, a and b), supra, the opinion holds: "Also, significance is to be given to the fact that subdivision 3 of the same section prevents a

rescission if the buyer knew of the breach of warranty, but does not expressly prohibit an action for damages in such event. Every indication is made, under this Uniform Sales Act, that acceptance with the knowledge of a breach of warranty prevents rescission, but does not interfere with an action for damages. Manifestly, the express language of the legislative enactment makes plain that acceptance will not bar an action for breach of warranty."

77 C. J. S., Sales, section 345a, page 1245, states: "If notice of breach of warranty is given as required by the act, * * * acceptance by the buyer does not preclude him from relying on a breach of warranty and does not discharge the seller from liability." Precedents which recognize this rule include: Reininger v. Eldon Mfg. Co., 114 Cal. App.2d 240, 250 P.2d 4, 7, 8; Truslow & Fulle v. Diamond Bottling Corp., 112 Conn. 181, 151 A. 492, 71 A. L. R. 1142, 1146, 1147; Rogiers v. Gilchrist Co., 312 Mass. 544, 45 N.E.2d 744; Wm. C. Atwater & Co. v. Panama R. Co., 255 N. Y. 496, 175 N.E. 189, 191; Kolberg v. Central Fruit & Grocery Co., 37 Ohio App. 64, 174 N.E. 144, 146.

The principal precedent defendant cites for this contention is Hoopes & Sons v. Simpson Fruit Co., 180 Iowa 833, 838, 161 N.W. 629. The opinion antedates adoption of our Sales Act containing the provisions quoted above which indicate acceptance of the goods with knowledge of breach of warranty does not prevent an action for damages for the breach unless the buyer fails to notify the seller of the breach within a reasonable time. The statutory provisions and Roland v. Markman, supra, 207 Iowa 1322, 1325, 1326, 224 N.W. 826, express the law now applicable.

Further, Hoopes & Sons v. Simpson Fruit Co., supra, recognizes, "Of course, there may be a warranty which will survive the sale, and which may be enforced after delivery and acceptance of the property" (page 838 of 180 Iowa). See also American Fruit Product Co. v. Davenport Vinegar & Pickling Works, 172 Iowa 683, 698, 699, 154 N.W. 1031.

There is another complete answer to defendant's contention plaintiff waived his claim for breach of warranty and is estopped to assert it. No such issue was pleaded. One who

relies on waiver or estoppel must plead the facts giving rise thereto. Watts v. Archer, 252 Iowa 592, 600, 107 N.W.2d 549, 553, and citations; Markman v. Hoefer, 252 Iowa 118, 123, 106 N.W.2d 59, 63, and citations; Evans v. Herbranson, 241 Iowa 268, 282, 41 N.W.2d 113, 122, 15 A. L. R.2d 925, and citations.

We find no reversible error in any respect assigned and argued by defendant.—Affirmed.

All JUSTICES concur.