Fred PUDWILL, Plaintiff and Appellant,

v.

Earl E. BROWN, Defendant
and Appellee.

No. 12909.

Supreme Court of South Dakota.

Submitted on Briefs May 22, 1980.

Decided July 16, 1980.

James Robbennolt, Pierre, for plaintiff and appellant.

Earl E. Brown, pro se.

HENDERSON, Justice.

## ACTION

Fred Pudwill, plaintiff-appellant, brought suit in the Second Judicial Circuit, Minne-

haha County, seeking to recover the sum of $10,695.00 pursuant to a contract between himself and Earl E. Brown, defendant-appellee, for 310 feeder pigs. Appellee urged that appellant had breached the implied warranty of fitness for a particular purpose as provided in SDCL 57–4–33 due to the death of 149 pigs that were supplied by appellant. After a trial to the court, judgment was entered on June 12, 1979, granting appellant the sum of $5,140.50 for the pigs that did not die. Appellant appeals from that judgment, urging that the circuit court erred in not allowing him recovery for the full contract price, i. e., $10,695.00. We affirm.

## FACTS

The parties herein involved first met in August of 1977, while appellant was delivering a load of feeder pigs to another party near Dell Rapids, South Dakota. Appellant, a resident of Pierre, South Dakota, is a supplier of feeder pigs to farmers. The pigs in question were raised on the Orville Ellenbecker farm at Gettysburg, South Dakota. Appellee is a resident of the Dell Rapids area and has been engaged in a livestock and mixed grain farm operation for several years. On August 2, 1977, appellant agreed to sell appellee 310 feeder pigs at the price of $34.50 per head for a total of $10,695.00.

Appellant purchased the pigs on August 9, 1977, from Mr. Barry Ellenbecker of Gettysburg. These pigs had been kept in a dirt lot with adequate shade, water, and feed. However, sometime prior to loading, the pigs had been moved from the aforementioned lot to a barn. Between 6:00 a.m. and 8:00 a.m. on August 9, 1977, the pigs were loaded on to appellant's horse trailer to transport them to appellee's farm. The pigs arrived at appellee's farm at approximately 2:00 p.m. that same day, indicating that they were in the trailer between five and one-half and seven and one-half hours.

During the unloading process, the pigs appeared gaunt, and some were coughing. Medicated and fresh unmedicated water were immediately made available. Surface water was also present. Appellant knew of the medication being used and did not disapprove, nor did he object to the use of any of the waterers.

On August 10, 1977, several members of the appellee's family observed that the pigs seemed stunned and listless. Sufficient water and an adequate feed supply were available for the pigs. By the morning of August 11, 1977, several pigs were dying, and approximately 100 pigs had died by the end of the day.

Dr. D. B. Phillips, a veterinarian from Colman, South Dakota, was called and arrived at appellee's farm around mid-morning on August 11, 1977. Dr. Phillips advised appellee to take several live and dead pigs to Dr. Martin Bergeland, a veterinary pathologist at the Veterinary Science Department of South Dakota State University at Brookings. Appellant was notified by appellee on August 11. or 12, 1977, of the pigs' health problems. Appellee also stopped payment on a $10,695.00 check issued to appellant for payment on the pigs.

Dr. Bergeland determined that the cause of death of the pigs was sodium ion toxicosis (salt poisoning), which is caused by water deprivation. Dr. Bergeland stated that 12 hours of water deprivation would be sufficient to cause sodium ion toxicosis and that symptoms can appear anywhere from two hours to several days after the animals are again allowed water. There in no known remedy for sodium ion toxicosis. Ultimately, 149 pigs died as a direct result of sodium ion toxicosis.

The trial court entered findings of fact, conclusions of law, and a judgment adjudicating that appellant was to recover only for the pigs that lived. The court concluded, as a matter of law, that:

There is an implied warranty of fitness at the time of sale, and that the defect must exist at that time, although the defect may not be fully developed at the time of sale, and although the defect was not known to the seller at the time of sale.

## ISSUE

Whether a buyer may refuse payment to a seller under SDCL 57–4–33 for goods received that prove defective for their particular purpose.

## DECISION

■ We agree with appellee's position that he is not required to pay appellant for the defective pigs purchased pursuant to the contract between the two parties. Appellant's actions constituted a breach of an implied warranty of fitness for a particular purpose, as imposed by the Uniform Commercial Code at SDCL 57–4–33.

■ For the implied warranty of fitness for a particular purpose to apply to a contract for a sale of goods, three elements are required:

1. The seller must have reason to know the buyer's particular purpose for the goods involved.
2. The seller must have reason to know that the buyer is relying on the seller's skill or judgment to furnish appropriate goods.
3. The buyer must, in fact, rely upon the seller's skill or judgment.

*Madison Silos, Div. of Martin Marietta Corp. v. Wassom,* 215 N.W.2d 494, 500 (Iowa 1974). White & Summers, Uniform Commercial Code § 9–9, 358 (2d ed. 1980).

■ It is not the function of this Court to question the lower court's findings of fact unless such factual determinations are "clearly erroneous." SDCL 15–6–52(a). *See also Big Sioux Township v. Streeter,* 272 N.W.2d 924 (S.D.1978); *In Re Estate of Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455 (1970). SDCL 15–6–52(a) also states that "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Accordingly, although we recognize the inconsistencies in some of the testimony at trial, the following factual determinations made by the circuit court were amply based on the evidence received and cannot be considered clearly erroneous. The seller, appellant, knew that the buyer, appellee, was going to use the pigs as feeders after the purchase was made. Appellant held himself out to appellee as having a knowledge or skill peculiar to feeder pigs, and appellee openly and reasonably relied upon appellant's expertise in furnishing the pigs.

The defect in some of the pigs received by appellee was that, within approximately two days after delivery, many of the animals began dying from sodium ion toxicosis. Appellant contends that the pigs he delivered to appellee were healthy and active. The facts indicate otherwise.

■ Testimony in the court below by the appellee and others present at the time the pigs were delivered evidences that some of the pigs were coughing and gaunt in appearance. As testified to by appellant at trial, these conditions are not especially abnormal for pigs which have been transported by truck for several hours. "Where the buyer of feeders states that he wishes stock for such purpose, there is an implied warranty that they will be fit, and free from any bad disease . . . ." 77 C.J.S. Sales § 330(a)(1). When a seller sells livestock for the purpose of providing feeders, this means that the animals are warranted to be healthy, i. e., capable of development to a suitable market condition. *Turner v. Kunde,* 256 Iowa 895, 128 N.W.2d 196 (1964). In a situation involving the sale of livestock for breeding purposes, the court in *Ruskamp v. Hog Builders, Inc.,* 192 Neb. 168, 219 N.W.2d 750 (1974), stated that there is an implied warranty of fitness for a particular purpose that "the animals . . . are not infected with a disease which substantially destroys their value for such purposes." *Id.* 192 Neb. at 177, 219 N.W.2d at 756. When appellant contracted to provide appellee with 310 feeder pigs, he impliedly warranted that the pigs would be fit for their particular purpose. By providing appellee with pigs which were stricken with sodium ion toxicosis, this warranty was breached.

■ Even though the defect (sodium ion toxicosis) in the pigs sold was not readily apparent to appellant when the pigs were

initially delivered, this factor does not prevent the implied warranty of fitness for a particular purpose from being in effect. "It is clear there may be an implied warranty of reasonable fitness of an animal notwithstanding the seller's lack of knowledge that it does not comply with the warranty and notwithstanding the difficulty of discovering this fact." *Ver Steegh v. Flaugh*, 251 Iowa 1011, 1025, 103 N.W.2d 718, 727 (1960). Appellant's good faith and lack of negligence in providing pigs he believed to be fit and healthy is no defense to an action of this type. *Reed v. Bunger*, 255 Iowa 322, 122 N.W.2d 290 (1963).

■ Appellant cites *Miron v. Yonkers Raceway, Inc.*, 400 F.2d 112 (1968), for the proposition that once acceptance of the goods has occurred, it is incumbent upon the buyer (appellee) to show that the ultimate illness of the pigs resulted from mistreatment or abuse of the animals prior to delivery. However, the court in *Miron* went on to state:

> In any case, if there are defects which are not discoverable by [an] inspection which the . . . [buyer] had a reasonable opportunity to make, the problem is taken care of by U.C.C. § 2–608(1), . . .

U.C.C. § 2–608(1), adopted in South Dakota in SDCL 57–7–20, provides:

> The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it . . . (2) Without discovery of such nonconformity if his acceptance was reasonably induced either by *the difficulty of discovery before acceptance* or by the seller's assurances. (Emphasis added).

Appellee's acceptance of the pigs does not require him to show that the pigs were suffering from sodium ion toxicosis when they were delivered to him. Due to the difficulty of recognizing the early stages of the disease, appellee's acceptance was reasonable and, when the disease and its effects became apparent, his revocation was proper.

■ Accordingly, the implied warranty of fitness for a particular purpose was breached by appellant as to the 149 pigs which died of sodium ion toxicosis. The decision of the circuit court granting appellant $5,140.50 as payment for the remaining live pigs and disallowing any damages to either party for consequential damages was proper.

The judgment is affirmed.

All the Justices concur.