572 F.2d 628
 Gerald J. GREEN, Timothy M. Green, Cy N. Lampe, Dayton G.
Howe, Richard J. Smith, H. J. Pohlman, R. W. Steele, Arnold
Fladoos, E. W. Coffman, N. J. Schrupp, individually and as
custodian of Nicholas J. Schrupp, III, and Dubuque
Communications Corp., d/b/a Channel 40 KDUB-TV, Appellants,
v.
AMERICAN BROADCASTING COMPANIES, INC., Appellee.
 No. 77-1442.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 13, 1977.
Decided March 8, 1978.
 
 Daniel P. Ernst, Dubuque, Iowa, argued and on brief for appellants.
 James R. Loftis, III, Washington, D.C. (argued), James H. Kelley, Eric J. Branfman, Washington, D.C., and Caryl W. Garberson and Richard S. Fry, Cedar Rapids, Iowa, on brief for appellee.
 Before LAY, BRIGHT and HENLEY, Circuit Judges.
 HENLEY, Circuit Judge.
 
 
 1
 This diversity case is before us on the appeal by plaintiffs from an order of the United States District Court for the Northern District of Iowa (Chief Judge Edward J. McManus) dismissing their complaint against American Broadcasting Companies, Inc. (ABC) on grounds of res judicata.
 
 
 2
 Plaintiffs are the principal stockholders in the now defunct Dubuque Communications Corp., d/b/a Channel 40 KDUB-TV, and the corporation itself.[1] The complaint is in two counts. The first count sets out a purported cause of action of the individual plaintiffs, and the second count sets out a purported cause of action of the corporate plaintiff, hereinafter called Station.
 
 
 3
 In both counts of the complaint it is alleged that in 1970 ABC breached a contract entered into between it and Station in 1969 under the terms of which Station became an ABC television affiliate in Dubuque, Iowa. It is undisputed that between June, 1970 and September, 1974 Station operated in Dubuque as an ABC affiliate, but that it became insolvent and was required to cease operations.
 
 
 4
 The position of the plaintiffs is that under the contract in suit it was the obligation of ABC to deliver its programs at its own expense to Station at the latter's facilities at Evergreen Park in Dubuque County (hereinafter Dubuque); that ABC refused to deliver its programs or signals beyond the test board of American Telephone & Telegraph Company at Cedar Rapids, Iowa, which is a substantial distance southwest of Dubuque; that as a result of that refusal Station was required to bear the expense of bringing the programs from Cedar Rapids to Dubuque, and that the expense was prohibitive and forced Station into a cessation of operations and insolvency. In the first count of the complaint the individual plaintiffs sought to recover $2,000,000.00 in damages; in the second count Station sought to recover $3,000,000.00 in damages.
 
 
 5
 The suit was filed originally in the district court of Dubuque County and was timely removed to the federal district court pursuant to 28 U.S.C. § 1441(a). Diversity jurisdiction is established.
 
 
 6
 This is the second suit that has arisen out of the relation between Station and ABC, and the case is referred to as Dubuque II. The first suit Dubuque I, was commenced as an antitrust action in the United States District Court for the Northern District of Illinois. Station was the sole plaintiff in that case which was assigned to the docket of District Judge Bernard M. Decker.
 
 
 7
 The contract involved in the instant case, Dubuque II, was silent as to the point to which ABC was required to deliver its programs at its expense. That contract was superseded by another contract entered into between Station and ABC on April 24, 1970. That contract clearly provided that ABC was not required to deliver its programs or signals beyond the A. T. & T. facilities at Cedar Rapids with the consequence that Station was required to bear the expense of bringing the programs or signals from Cedar Rapids to Dubuque.
 
 
 8
 Dubuque I was commenced in June, 1973, and the complaint therein made no reference to the original 1969 contract between Station and ABC. The theory of Station was that the 1970 contract required Station to use the A. T. & T. facilities rather than other and cheaper facilities that were available, and that the alleged requirement constituted a "tying agreement" made unlawful by § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. Station sought treble damages and injunctive relief under relevant provisions of the Clayton Act which are codified as 15 U.S.C. §§ 15 and 26.
 
 
 9
 In February, 1976 a bench trial of Dubuque I was commenced before Judge Decker. At the conclusion of Station's case ABC moved for judgment pursuant to Fed.R.Civ.P. 41(b) and offered no evidence. Judge Decker took the motion under advisement.
 
 
 10
 Perhaps anticipating an unfavorable ruling in Dubuque I, plaintiffs commenced the instant action in April, 1976 while ABC's Rule 41(b) motion was still pending in the Illinois litigation. In Count I of the complaint in this case the individual plaintiffs alleged in substance that ABC owed an independent contractual duty to them to deliver ABC programs to Dubuque; that in reliance on the alleged duty of ABC the individual plaintiffs invested large sums of money in Station and its operation and suffered heavy loss as a result of ABC's alleged breach of duty.[2] In Count II Station alleges that the wrongful refusal of ABC to deliver its programs to Dubuque caused Station to suffer heavy loss and to become insolvent. The complaint in Dubuque II makes no reference to Dubuque I.
 
 
 11
 On May 20, 1976 the Illinois court held in Dubuque I that Station had not made a case and dismissed the complaint. In a full memorandum opinion Judge Decker found that ABC did not require Station by contract or otherwise to use A. T. & T. facilities rather than other and cheaper facilities, and that those who represented Station in the negotiations between it and ABC knew at all times that Station would have to pay for bringing ABC programs from Cedar Rapids to Dubuque. The judgment of the Illinois court was affirmed without opinion. Dubuque Communications Corp. v. American Broadcasting Companies, Inc., 547 F.2d 1170 (7th Cir. 1976), cert. denied, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977).
 
 
 12
 During the pendency of the appeal in Dubuque I, ABC moved to transfer Dubuque II to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a), and the motion was granted by Judge McManus. Judge Decker, however, refused to accept the transfer and sent the case back to Iowa.
 
 
 13
 Before that happened, ABC filed a motion to dismiss the complaint in Dubuque II on the ground that it did not state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). The Illinois court did not rule on that motion, and after the case was retransferred, the motion was renewed by ABC.
 
 
 14
 Having accepted the retransfer of the case, Judge McManus considered ABC's motion to dismiss the complaint and obviously treated it as a motion for summary judgment which he was required to do since in passing upon it he looked beyond the face of the complaint.[3]
 
 
 15
 The motion was based on a number of grounds: (1) that the action was barred under principles of res judicata and collateral estoppel by the proceedings in Dubuque I; (2) that alleged oral modifications of the 1969 contract were ineffective because of the "integration" provisions of that contract; (3) that the 1969 contract had expired by its own terms when the alleged breach took place; (4) that the action was barred by limitations; and (5) that the individual plaintiffs lacked standing to maintain Count I of the complaint.
 
 
 16
 In sustaining the motion to dismiss the district court considered the claim of ABC that the action was barred by that phase of the doctrine of res judicata that is referred to in Iowa as "claim preclusion." In passing on the question of claim preclusion the district court was of the view that the governing law was that of Iowa, and plaintiffs do not quarrel with that proposition. The district court held that the individual plaintiffs were in privity with Station for claim preclusion purposes, that the claim asserted by Station in this case was presented or could have been presented in Dubuque I, and that to entertain the claim in the instant case would be to countenance an impermissible splitting of a single cause of action.
 
 
 17
 After declaring the applicable law to be that of Iowa, the district court pointed out that in Iowa the concept of res judicata is divided into two separate categories, namely "claim preclusion" and "issue conclusion," and the court held that it was the doctrine of claim preclusion that barred Station and its investors from maintaining the action.
 
 
 18
 Judge McManus then proceeded to state the doctrine of claim preclusion in Iowa in the following language:
 
 
 19
 Claim preclusion in Iowa is substantially similar, if not equivalent, to the generally recognized rule that a party may not split his cause of action, trying his claim piecemeal, but must present all aspects of the entire claim which can be presented to the court for disposition. Compare B & B Asphalt Co. v. T. S. McShane, supra and Swisher & Cohrt v. Yardarm, Inc., 236 N.W.2d 297, 299 (Iowa 1975) with 1B Moore, Federal Practice, P 0.410(2), (2d ed. 1974) and 6 Wright & Miller, Federal Practice and Procedure, Civil § 1582 (1971). The bases for the application of the principle are protection of the defendant from repetitive litigation and efficient utilization of judicial resources. Therefore, a party must litigate all matters growing out of his claim in one action rather than successive actions. Warnecke v. Foley (234 Iowa 348), 11 N.W.2d 457, 458-59 (Iowa 1943).
 
 
 20
 The judge felt that there were two questions before him for decision: (1) Whether Station's investors could be precluded by the result of the Dubuque I litigation to which they were not parties; and (2) whether the contentions advanced in Dubuque I and in Dubuque II derived from the same claim or cause of action so that the doctrine of claim preclusion would bar the maintenance of Dubuque II by the corporate plaintiff. The district court answered both of those questions in the affirmative.
 
 
 21
 By way of introduction to discussion of the first question the district court stated that it is clear in Iowa that in order to constitute privity of parties perfect symmetry of parties in successive actions is not a prerequisite at least as far as "issue preclusion" (collateral estoppel) is concerned, but that it can be argued that "claim preclusion" requires a "closer relationship, bordering on near identity, between the parties to be precluded and previous parties, since the entire claim rather than a mere issue is precluded." And the district court cited in that connection the article of Professor Allan D. Vestal of the University of Iowa College of Law, "Claim Preclusion And Parties In Privity: Sea-Land Services V. Gaudet In Perspective," 60 Iowa Law Review 973, 976 (1975). The district court found that privity between the investors and Station existed, and on that point said:
 
 
 22
 The basic principle in multiple party claim preclusion cases seems to be that certain individuals may be so closely related, their interests so interwoven, or their rights so similar that it is unfair to treat them separately. Vestal, supra, at 975. This principle is applicable here. In a very real sense the investors here are Dubuque Communication Corp. Without the investors' $900,000 investment the corporation would never have come into existence. The Iowa court and others have found privity in situations similar to here. See Jordan v. Stuart Creamery, Inc. (258 Iowa 1), 137 N.W.2d 259 (Iowa 1965); Reconstruction Finance Corp. v. Central Republic Trust Co., 128 F.2d 242 (7th Cir. 1942) cert den 317 U.S. 660 (63 S.Ct. 60, 87 L.Ed. 531) (1942). See also 1B Moore, Federal Practice, P 0.411(10) (2d ed. 1974).
 
 
 23
 Turning to the second question that has been mentioned, Judge McManus said:
 
 
 24
 In Dubuque I plaintiff claimed to have reached an agreement with ABC according to a written affiliation contract dated August 8, 1969, which was superseded by a Primary Affiliation Contract dated April 27, 1970. These are the same contracts, together with certain oral provisions, that are at issue here. (Footnote omitted.) In Dubuque I plaintiff claimed that ABC had apparently prepared to deliver programs to the station (footnote omitted) until approximately April 23 when in a Primary Network Affiliation Contract dated April 27, 1970, ABC allegedly coerced Dubuque into accepting AT & T long-line delivery at Dubuque's expense. This action by ABC allegedly constituted an illegal tying arrangement in Dubuque I. It allegedly constitutes breach of contract here.
 
 
 25
 In Dubuque I Judge Decker necessarily was constrained to examine the source of the coercion establishing the purported tying arrangement. Contractual and other sources were examined. The April 27, 1970, contract was rejected as a course of coercion. The relative imbalance in bargaining position was rejected. Finally, in a conclusion relevant here, the court opined that there was no evidence indicating other than ABC's usual policy of requiring prospective affiliates to obtain signal delivery at the affiliate's expense whatever the mode of delivery might be, and that Dubuque was well aware of that policy. This conclusion was relevant to show an absence of coercion in Dubuque I. It is relevant here to show the relative convergence of plaintiffs' contentions into a single cause of action within the meaning of claim preclusion. (Footnote omitted.)
 
 
 26
 Accordingly, the contentions should not have been split but should have been asserted initially and in the alternative. Plaintiff is precluded not only from asserting matters which were decided in Dubuque I but which might have been asserted as well. Engelhardt v. Bell & Howell Co., 327 F.2d 30, 31-32 (8th Cir. 1964); Norman Tobacco & Candy Co. v. Gilette (Gillette), (footnote omitted) 295 F.2d 362, 363-64 (5th Cir. 1961).
 
 
 27
 The court agrees with defendant that plaintiffs may have declined to present their full panoply of contentions in Dubuque I because of the awkward position of arguing seemingly inconsistent theories of recovery. However, it is clear that alternative and inconsistent pleading are quite acceptable in federal court, (footnote omitted) and as evidenced by the result reached here, are often required.
 
 
 28
 As indicated, the questions before the district court were questions of local law and with respect to those questions the views of the able and experienced district judge are entitled to great weight. See, e. g., the following diversity cases that have arisen in Iowa: Gatzemeyer v. Vogel, 544 F.2d 988 (8th Cir. 1976); Hysell v. Iowa Public Service Co., 534 F.2d 775 (8th Cir. 1976); Simpson v. Skelly Oil Co., 371 F.2d 563 (8th Cir. 1967); Indemnity Ins. Co. of North America v. Pioneer Valley Savings Bank, 343 F.2d 634 (8th Cir. 1965). We have considered the opinion of Judge McManus and the authorities cited by him, and we could add little of any real substance to what he has said. We agree with him that the corporate plaintiff is precluded from maintaining this action, and that the individual plaintiffs stand on no firmer ground.
 
 
 29
 The judgment of the district court is affirmed.
 
 
 
 [1]
 The individual plaintiffs are Gerald J. Green, Timothy M. Green, Cy N. Lampe, Dayton G. Howe, Richard J. Smith, H. J. Pohlman, R. W. Steele, Arnold Fladoos, E. W. Coffman and N. J. Schrupp, individually and as custodian of Nicholas J. Schrupp, III
 
 
 [2]
 The Supplemental Appendix tendered on this appeal by ABC indicates that when the original contract between Station and ABC was entered into in 1969 Gerald J. Green and Timothy M. Green were the sole stockholders of Station. The other individual plaintiffs seem to have made their investments later under the terms of a contract entered into in October, 1969 between Station, the Greens, and the other individual plaintiffs. The contract indicates that the plaintiffs, other than the Greens, made or were to make substantial investments in the operation, and that the Greens themselves were to invest additional funds of their own
 
 
 [3]
 If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. (Fed.R.Civ.P. 12(b))